David SNOW, et al., Plaintiffs, Appellants,

v.

HARNISCHFEGER CORPORATION, Defendant, Appellee.

No. 93–1489.

United States Court of Appeals, First Circuit.

Heard Sept. 8, 1993.

Decided Dec. 29, 1993.

Rehearing Denied Jan. 26, 1994.

Walter A. Costello, Jr. with whom Julie M. Conway and Costello, Barrett and Gonthier, P.C. were on brief, for plaintiffs, appellants.

David M. Rogers with whom Richard P. Campbell and Campbell & Associates, P.C. were on brief, for defendant, appellee.

Before TORRUELLA and STAHL, Circuit Judges, and DiCLERICO,* District Judge.

DiCLERICO, District Judge.

Plaintiffs David Snow, Linda Snow, Jason Snow and Kevin Snow brought an action against defendant Harnischfeger Corporation ("Harnischfeger") alleging defective design and negligence after the trolley wheel of an Harnischfeger crane injured David Snow.

Harnischfeger moved for summary judgment, claiming the Massachusetts real estate statute of repose barred the action. The district court agreed and granted summary judgment. We affirm.

## I

### BACKGROUND

In March 1973, Rust Engineering Company ("Rust"), an engineering and construction firm acting as agent for Refuse Energy Systems Company ("RESCO"), engaged Harnischfeger to assist in the design and manufacture of two thirteen-ton overhead cranes for use at RESCO's Saugus, Massachusetts trash-to-energy plant.[1] The cranes are used to move trash into trash feed hoppers where the trash is burned and steam is generated and converted into electricity. Rust incorporated the cranes into the plant's buildings as part of the original construction. Harnischfeger was not involved in the design or construction of the RESCO facility, nor did Harnischfeger install the cranes.

On December 29, 1987, the trolley wheel of one of the overhead cranes severed David Snow's third, fourth and fifth finger and a portion of his right hand. At the time, Snow was working at the Saugus facility. The Snow family brought an action in Essex Superior Court, Commonwealth of Massachusetts, alleging the crane was unsafe due to Harnischfeger's failure to equip the trolley with wheel guards and rail sweeps, automatic audio or visual movement alarms, a proper lock-out system or kill switch, and Harnischfeger's failure to warn of inherent risks.[2] Harnischfeger removed the action to the district court pursuant to 28 U.S.C. § 1446, and moved for summary judgment under the Massachusetts real estate statute of repose ("statute").

---

* Of the District of New Hampshire, sitting by designation.

1. Harnischfeger has designed and manufactured overhead cranes since 1906 and has built more than 24,000 overhead trolley cranes. Harnischfeger customizes each overhead trolley crane it manufactures. Overhead cranes such as those built by Harnischfeger are generally considered heavy-duty machinery for specific production purposes and used by many industries to lift and move heavy objects.

2. In their amended complaint, the Snows charge Harnischfeger with defective design, negligence, breach of express warranty and breach of the implied warranty of merchantability.

The statute, Mass.Gen.Laws Ann. ch. 260, § 2B (West 1992) ("M.G.L. c. 260, § 2B"), provides:

> Action [sic] of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property ... shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner.[3]

*Id.*[4] The district court found Harnischfeger was included in the class of actors protected under the statute and granted the summary judgment motion.[5]

On appeal the Snows argue (1) the district court improperly granted summary judgment where genuine issues of material fact remained; (2) the district court impermissibly extended repose to the manufacturer of a machine thereby changing Massachusetts' product liability law; (3) the district court improperly found Harnischfeger was a protected actor within the meaning of M.G.L. c. 260, § 2B; and (4) questions of local law are central to the disposition of the appeal and should be certified to the Massachusetts Supreme Judicial Court ("SJC").

## II

### DISCUSSION

#### Standard of Review

■■■ "We review a grant of summary judgment *de novo*, using the same criteria incumbent upon the district court." *Gaskell v. Harvard Coop. Soc'y,* 3 F.3d 495, 497 (1st Cir.1993) (citing *VanHaaren v. State Farm Mut. Auto. Ins. Co.,* 989 F.2d 1, 3 (1st Cir. 1993); *High Voltage Eng'g Corp. v. Federal Ins. Co.,* 981 F.2d 596, 598 (1st Cir.1992); *Pedraza v. Shell Oil Co.,* 942 F.2d 48, 50 (1st Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 993, 117 L.Ed.2d 154 (1992)). The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir.1992). It is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to establish the lack of a genuine, material factual issue, *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 15 (1st Cir.1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990)), *cert. denied,* — U.S. —, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Caputo v. Boston Edison Co.,* 924 F.2d 11, 13 (1st Cir. 1991). Once the defendant has made a properly supported motion for summary judgment, however, the plaintiffs "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)).

#### Issues of Fact

According to the Snows, four genuine issues of material fact remain in dispute, mak-

---

**3.** Massachusetts courts have construed the statute to apply to implied breach of warranty claims where the underlying cause of action is the same as the tort claim. *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514, 526 & n. 19 (1982); *see also Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc.,* 396 Mass. 818, 489 N.E.2d 172, 175 (1986).

**4.** M.G.L. c. 260, § 2B was last revised in 1984. *Id.*

**5.** The district court barred the Snows' action noting the RESCO plant became operational in 1975 and the Snows did not institute their action until 1990. In 1986, Harnischfeger designed two replacement trolleys. The Snows do not argue that we should measure the application of the statute from the date Harnischfeger designed the replacement trolleys.

ing summary judgment inappropriate. We have reviewed their contentions and find them to be without merit.

The Snows first argue there is a genuine issue of fact as to whether Harnischfeger is in the construction business.[6] The Snows do not dispute Harnischfeger designed and manufactured the crane. Instead, the Snows assert that these activities are not sufficient for a court to find that Harnischfeger is involved in the construction industry and that such involvement is necessary to bring Harnischfeger within M.G.L. c. 260, § 2B. Harnischfeger contends M.G.L. c. 260, § 2B provides protection " 'to architects, *engineers,* contractors *and others* involved in the *design, planning,* construction or general administration of improvements to real property' " and suggests it deserves repose as an " 'engineer' or 'other' involved in the 'design,' 'planning' and 'construction' of the overhead crane." Brief of Defendant–Appellee at 10–11 (alteration in original) (quoting *Klein,* 437 N.E.2d at 523).

■ Whether a defendant's activities fall within the statute is a question of law. *See, e.g., McDonough v. Marr Scaffolding Co.,* 412 Mass. 636, 591 N.E.2d 1079, 1081 (1992) (court appropriately granted summary judgment after concluding defendant's actions were construction activity contemplated by M.G.L. c. 260, § 2B). Moreover, as Harnischfeger notes, the statute does not limit its protection solely to those involved in the actual construction of improvements to real property. Harnischfeger may be a protected actor even without being involved in the construction business. As the district court aptly stated, the Snows' contention is "merely [an argument] about how to apply law to the established facts." *Snow v. Harnischfeger,* 823 F.Supp. 22, 24 (D.Mass.1993). To the extent there is a dispute, it is immaterial to the disposition of the action.

■ The Snows next argue there is a genuine issue of fact as to whether the overhead

crane is a unique product. They argue the crane, like many standard cranes, was merely customized to fit inside a building, shed or structure. Harnischfeger maintains that the product is unique and custom designed for RESCO. In support Harnischfeger offers affidavits showing the following: Harnischfeger designed, manufactured and constructed the cranes' lifting capacity as well as the dimensions of the major components for specific plant and job functions; Rust supplied specifications that were the basis of the designs including specified overhead and wall clearances; and Harnischfeger custom designed sixteen component parts and manufactured and assembled virtually all the components. The Snows counter that they have presented evidence showing the crane is a standard design and the trolley was previously designed for sale in Florida.

The Snows' evidence, which consists of Harnischfeger's brochures and literature along with expert affidavits and deposition testimony, does not create any genuine issue of fact for trial. The brochures emphasize that customers should avoid "standard" cranes and should have Harnischfeger's experts design a crane that will satisfy their particular needs. At best, the literature suggests Harnischfeger has standardized the materials used to create the crane and standardized certain components to be mixed and matched into a final product. In addition, the opinions of Snows' experts that the crane, as a final product, is a basic design similar to cranes used in other industries do not contradict Harnischfeger's evidence. A crane can be designed for a particular location and specialized function and still retain the essential characteristics common to industrial cranes. Moreover, the ability of the crane to be adopted for use by another industry is immaterial to Harnischfeger's status as a protected actor because the relevant inquiry involves the motivation behind and the activity of producing the product, not the product itself. *See Dighton v. Federal Pac. Elec. Co.,*

---

6. The Snows assert:

 [t]he defendant claimed that because it manufactured an overhead crane that became affixed to real property, it was involved in the construction business. The plaintiffs contend that the defendant's design and manufacture of

 an overhead crane which is housed in a structure on real property, does not mean the defendant was involved in the type of construction contemplated by M.G.L. c. 260 § 2B.

 Brief of the Plaintiffs–Appellants at 5–6.

506 Mass. 687, 506 N.E.2d 509, 516 (1987). Furthermore, the deposition testimony of James Fravert, a Harnischfeger employee, does not establish that the design of the RESCO trolley was the same as one previously used by Harnischfeger for sale to Brevard County, Florida. Fravert does not testify that the *design* was duplicated, only that a design *drawing* was duplicated and the duplicated drawing was modified to create the drawing for the RESCO crane.

Lastly, the Snows raise the issue of the status of the crane, arguing first that there is a genuine issue of fact as to whether the crane is an improvement to real property. Once again, however, the Snows do not dispute any relevant facts but rather the application of law to these facts. The parties agree as to the essential characteristics of the crane. There is an established legal standard defining improvements for purposes of M.G.L. c. 260, § 2B as well as case law establishing when the definition should be applied. *See Milligan v. Tibbetts Eng'g Corp.*, 391 Mass. 364, 461 N.E.2d 808, 811 (1984) (adopting definition found in Webster's Third International Dictionary); *see also Dighton*, 506 N.E.2d at 516 (explaining when definition is useful). The Snows suggest no disputed facts that would in any way preclude us from applying the legal standard.

■ The Snows also argue there is a genuine issue of fact as to whether the crane is a permanent fixture. The SJC has rejected adoption of a fixture analysis to determine applicability of the statute of repose, noting the statute "makes no reference to 'fixtures,' nor does it appear that the Legislature intended, by its choice of the common term 'improvement,' to subsume that tangle of highly technical meanings, often distinct in diverse legal contexts, which is the law of fixtures." *Dighton*, 506 N.E.2d at 515. The fact that a product is affixed, permanently or otherwise, neither makes the product an improvement nor turns the producer into a protected actor. *Id.* Thus, the crane's status as a permanent fixture is immaterial to our inquiry.

## Harnischfeger as a Protected Actor

The Snows further challenge the summary judgment order by maintaining the district court acted impermissibly and without precedent in applying the statute to Harnischfeger, who they define as "manufacturers of a machine." The Snows argue Harnischfeger, as a manufacturer, is outside the class of actors M.G.L. c. 260, § 2B is designed to protect. Harnischfeger admits to having manufactured the crane but argues a manufacturer who engages in protected activities is entitled to repose.

■ The purpose of the statute is "to protect providers of 'individual expertise'" who "render particularized services for the design and construction of particular improvements to particular pieces of real property." *Id.* The statute does not name a class of protected actors, but instead extends protection to "those who commit 'any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property.'" *Id.* at 514. Certain actors obviously fall within the statute. *See id.* at 516. These actors include architects, engineers and contractors. *Klein*, 437 N.E.2d at 523. The statute shields these actors from any liability after six years as long as they were involved in an enumerated activity with respect to an improvement to real property. Other actors, such as materialmen and "mere" suppliers, are outside the scope of the statute and not entitled to its protection. *Dighton*, 506 N.E.2d at 514 n. 10; *McDonough*, 591 N.E.2d at 1082.

■ Ambiguity in the application of M.G.L. c. 260, § 2B arises when it is unclear whether a party acted as a materialman or supplier rather than an architect, engineer, contractor, surveyor or some other protected actor. *See Dighton*, 506 N.E.2d at 514. A party is not a protected actor when the party does not perform protected acts. *See id.* at 515. Conversely, an actor such as a manufacturer or supplier may be protected if that actor becomes more than a "mere" supplier by engaging in protected activities. *McDonough*, 591 N.E.2d at 1082 (manufacturer who designed bleacher units specifically for the rink in which they were installed by another is more than mere supplier and entitled to

benefit of statute). Thus, application of the statute is necessarily dependent on the nature of the party's activities.[7] *See Dighton*, 506 N.E.2d at 516.

In *Dighton*, the defendant did not claim to have provided particularized services with respect to the improvement—the building—but rather claimed the benefit of the statute as a designer, manufacturer and supplier of a component that fell within Webster's definition of improvement.[8] *Id.* at 515, 516. The SJC did not reject the contention that a producer of a component may be entitled to protection. *See id.* at 516; *see also McDonough*, 591 N.E.2d at 1084. Instead, the SJC rejected a formalistic inquiry and established the producer's motivations and activities as the relevant focus of inquiry, not the nature of the product or the ability to define the product as an improvement or a fixture. *Dighton*, 506 N.E.2d at 516.

■ In considering whether an actor not clearly within the statute is entitled to repose, the court engages in a fact-based activities analysis. *See id.* The court must consider the motivation of the actor in producing the improvement.[9] *Id.* If the actor designed the improvement for public sale or for general use, then the actor is not protected because the actor is engaged in the activity of creating a fungible product. *See id.* If, however, the improvement is produced for a particular project and to the specifications of an architect or an engineer, M.G.L. c. 260, § 2B·may protect the actor as someone engaged in the activity of designing a particularized improvement. *Id.*

■ Like the defendant in *Dighton*, Harnischfeger does not claim to have rendered particularized services with respect to the design or construction of the RESCO facility. Instead, Harnischfeger claims to be brought within the protection of the statute by designing RESCO's cranes. Pursuant to affidavits submitted, when designing the crane that caused Mr. Snow's injuries, Harnischfeger's motivation in producing the crane was to create, at the request of the construction engineer, an essential component of the plant building, made to the construction engineer's specifications, for sale only to RESCO and for incorporation only into the RESCO plant. RESCO intended the cranes to be a permanent and integral part of the overall plant, making the property useful. Harnischfeger was not motivated to create a fungible crane

---

7. The Snows argue that *Dighton* imposes a requirement upon the court to engage in a two-step analysis to determine whether Harnischfeger is protected under M.G.L. c. 260, § 2B. According to the Snows, *Dighton* requires the court to consider whether the statute names the party as a protected actor, i.e., an architect or engineer. If the answer is yes, the court may determine whether the defendant engaged in protected acts.

*Dighton* imposes no such test. The *Dighton* court merely noted that the trial judge framed the question in·this bipartite form. 506 N.E.2d at 514. The court rejected the bipartite formulation:

On its face, § 2B defines the protected actor largely by reference to protected acts. The body of § 2B names no class of protected actors. Rather, its terms extend protection to persons allegedly responsible for acts, i.e., those who commit "any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property."

*Id.* Thus, the court can and must engage in an activities analysis when the defendant's status as a protected actor is unclear. *See id.*

8. This definition has been adopted by the SJC where the defendant's status as a protected actor is not in doubt. *Id.* at 516.

9. The SJC provides the following illustration:

[I]f a piece of metal sculpture were welded to an exposed girder in a building, it certainly could be characterized as a "permanent addition to or betterment of" the property, one "enhanc[ing] it capital value," one "involv[ing] the expenditure of labor or money," one "designed to make the property more ... valuable," and one clearly distinguish[able] from ordinary repairs." But would that tell us whether, or to what extent, the sculptor had been involved in the protected *activity* of "improvement to real property?" We think not. If he produced the sculpture on commission by the developer to specifications provided in part by the architect and the engineer, we might conclude that he is protected by § 2B; but if he mass-produced the sculpture and sold it for use in a variety of contexts, or for incorporation into any building, we would conclude that he had been involved merely in the activity of producing and selling a fungible commodity, and not in the activity of improving real estate.

*Dighton*, 506 N.E.2d at 516 (alteration in original).

available to a variety of buyers and appropriate for incorporation into a number of facilities. Harnischfeger's actions conform to those outlined by the *Dighton* Court and are protected activities.[10]

 As the plaintiffs note, "[w]hen faced with the question of whether or not the defendant is entitled to repose under M.G.L. c. 260 § 2B, the first question to be answered is 'Is the defendant a protected actor under M.G.L. c. 260 § 2B?'" Brief of the Plaintiffs–Appellants at 11. Having answered affirmatively, we now state our agreement with the trial court that the crane is an improvement to real property within the meaning of the statute. *See Snow*, 823 F.Supp. at 24–25. For purposes of M.G.L. c. 260, § 2B, an improvement is

> a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Milligan*, 461 N.E.2d at 811 (quoting *Raffel v. Perley*, 14 Mass.App. 242, 437 N.E.2d 1082, 1085 (1982)). RESCO intended the crane to be a betterment of real property enhancing its capital value and making the property more useful and valuable. Therefore, Harnischfeger is entitled to the protection afforded by M.G.L. c. 260, § 2B.

### Certification

Following the district court order and subsequent appeal and shortly before oral arguments, the Snows brought a motion asking for the first time that the following two questions be certified to the SJC:

> (1) Whether the defendant, Harnischfeger, the manufacturer of a manually operated overhead crane, is a member of the class M.G.L. c. 260, § 2B was designed to protect?
>
> (2) Whether the district court acted appropriately in using Webster's Third International Dictionary's definition of 'improve-

ment' in determining whether the plaintiffs' product liability claims were barred by M.G.L. c. 260, § 2B?

The Snows had argued to the district court that *Dighton* was dispositive of the issues in their case but now claim "[t]he foregoing questions of local law are central to the disposition of this appeal.... [T]he local law on this question has not been clearly determined."[11] Plaintiffs–Appellants' Memorandum in Support of their Motion to Certify Questions of Local Law to the Supreme Judicial Court of Massachusetts at 2.

 Certification of determinative issues is appropriate where "it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Judicial Court." Supreme Judicial Court Rule 1:03, § 1 (1986). The SJC construed the scope of M.G.L. c. 260, § 2B in a number of cases. *See, e.g., McDonough*, 591 N.E.2d at 1084 (repose extends to designer of bleacher units specifically designed for rink); *Parent v. Stone & Webster*, 408 Mass. 108, 556 N.E.2d 1009, 1011 (1990) (repose extends to construction engineer who installs distribution panel); *Dighton*, 506 N.E.2d at 516 (repose does not extend to manufacturer of mass marketed circuit breaker affixed to real property). The Snows themselves list in their motion for certification no less than ten cases where Massachusetts courts have determined whether a defendant is a protected actor under M.G.L. c. 260, § 2B. Massachusetts courts have also extensively addressed when Webster's definition of improvement is to be utilized. *See Dighton*, 506 N.E.2d at 516; *Milligan*, 461 N.E.2d at 811; *Raffel*, 437 N.E.2d at 1085. Thus, we are satisfied that sufficient guidance is available and certification is inappropriate under the circumstances of this case.

*Affirmed.*

---

**10.** As the Snows' experts note, a subsequent purchaser could remove and modify the RESCO cranes for use in another industry, although this contingency was neither Rust's nor Harnischfeger's intention. Furthermore, we do not look at possible future uses and are therefore unconcerned that the crane could someday be sold to another party, or could be incorporated into another plant.

**11.** The Snows also acknowledged the dispositive nature of the case law at a hearing before the district court.