Barnfield v. State of NH                CV-95-293-JD  09/30/96  P
                    UNITED STATES DISTRICT COURT FOR THE
                           DISTRICT OF NEW HAMPSHIRE


Ronald Barnfield

        v.                                Civil No. 95-283-JD

State of New Hampshire


                                O R D E R


        The plaintiff, Ronald Barnfield, brought this action

alleging that the defendant, the state of New Hampshire, violated

the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 12101-12213, by wrongfully terminating his employment as a

remedial teacher at the Youth Development Center ("YDC") after he

sustained a job-related injury.  Currently before the court is

the defendant's motion for summary judgment under Rule 56

(document no. 11).


                             Background[1]

        Beginning in 1990, the defendant employed the plaintiff as a

remedial teacher at the YDC, a state correctional facility

maintained by the New Hampshire Department of Health and Human

_____

        [1]The facts relevant to the instant motion are either not in
dispute or have been alleged by the plaintiff.

Services and designed to detain and rehabilitate juvenile delinquents. The plaintiff taught automobile mechanics to teenage students and throughout his active employment satisfactorily performed all the duties of his position. One of his responsibilities, as indicated by his formal job description, was to "[m]aintain[] the integrity of the secure care system through closely supervising students in classrooms . . . and through appropriately intervening in cases of possible AWOL, assault, or self-injury to provide for the safety of institution residents, staff and the community." Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Ex. G at 1.

The plaintiff shared responsibility for ensuring security with both a teacher's aide, who assisted the plaintiff and was always in the classroom, and cottage counselors, who were always nearby but not normally in the plaintiff's classroom. The plaintiff completed an initial twenty-hour training session, annual four-hour refresher courses, and monthly workshops in aggressive behavior management, as required of all YDC employees who came in contact with the students. On two occasions during his employment, he physically restrained students with the help of the teacher's aide. The process of restraining a juvenile

2

involved the plaintiff and the aide each grabbing one of the student's arms and then, when the cottage counselor arrived, turning the student over to the cottage counselor. On other occasions, the plaintiff interposed himself between combative students or blocked individual students near a wall to segregate them from other students.

On March 20, 1992, during the course of his employment, the plaintiff suffered a back injury -- a herniated disc that ultimately required surgery. On doctor's advice, he did not return to work during either the 1991-92 or the 1992-93 school years, but took disability leave. During the spring of 1993 he informed his supervisor that he felt he could return to work, but because the school year was nearly over his supervisor instructed him to wait until the next school year to return. On June 10, 1993, one of the plaintiff's physicians sent a medical report to the defendant, opining that the plaintiff could return to work with restrictions on lifting and the additional limitation that he "not be the physical disciplinarian of challenging, resistive or combative teenagers." Complaint ¶ 18.

Shortly after receiving the doctor's medical report, the defendant notified the plaintiff by a letter dated June 22, 1993,

3

that he was being discharged from employment for non-disciplinary reasons as of June 25, 1993. The letter stated that "it is impossible to guarantee that you would not be in a position where physical restraint of a student is required." Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Ex. B, Attachment 6 at 1.

Despite receiving this notice, the plaintiff requested that he be allowed to continue in his position with the "accommodation" that the security function of restraining juveniles be assumed by his aide and the cottage counselors. Although as of September 1993, the plaintiff physically was ready to return to work and capable of performing all of his job functions, including restraining students if necessary, he was not reinstated to his former position and did not find another satisfactory position with the defendant. On June 1, 1995, the plaintiff filed this action seeking a jury trial claiming that the defendant terminated his employment in violation of the ADA.[2]

## Discussion

The defendant has moved for summary judgment, claiming,

---

[2]The plaintiff initially asserted two additional claims, which previously have been dismissed.

inter alia, that the plaintiff was not a "qualified individual with a disability" under the ADA because he could not perform the essential job function of restraining YDC juveniles when he was discharged. The defendant asserts that the plaintiff was not entitled to the accommodation of having an aide take over the security function he could not perform because doing so would have eliminated an essential job function. The plaintiff counters that he was disabled within the meaning of the ADA. In addition, he asserts that he was a qualified individual because since September 1993, he has been able to perform all essential functions of his job with or without a reasonable accommodation.

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied, 504 U.S. 985 (1992). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial[,]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)), or suffer the "swing of the summary judgment scythe." Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d 1555, 1561 (1st Cir. 1989). "In this context, `genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving

6

party, Anderson, 477 U.S. at 248; `material' means that the fact is one `that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 248).

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual."  42 U.S.C.A. § 12112(a) (West 1995).  The statute defines a disability as "(A) a physical or mental impairment that substantially limits one or more . . . major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  Id. § 12102(2).  Under the ADA, a qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  Id. § 12111(8).  In light of the statutory definitions, the ADA provides a cause of action for a party who can show:

> First, that he was disabled within the meaning of the Act.  Second, that with or without reasonable accommodation he was able to perform the essential functions of his job.  And third, that the employer discharged him in whole or in part because of his disability.

<u>Katz v. City Metal Co.</u>, 87 F.3d 26, 30 (1st Cir. 1996).  The statute and its implementing regulations further define the terms "essential function" and "reasonable accommodation."

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires" and not "the marginal functions of the position."  29 C.F.R. § 1630.2(n)(1) (1995).

> A job function may be considered essential for any of several reasons, including but not limited to the following:
>
> (i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

<u>Id.</u> § 1630.2(n)(2).  The regulations also provide guidance as to what factors a court may consider in determining whether a function is essential (hereinafter the "CFR factors"):

> Evidence of whether a particular function is essential includes, but is not limited to:
>
> (i)  The employer's judgment as to which

8

functions are essential;

       (ii)  Written job descriptions prepared before advertising or interviewing applicants for the job;

       (iii)  The amount of time spent on the job performing the function;

       (iv)  The consequences of not requiring the incumbent to perform the function;

       (v)  The terms of a collective bargaining agreement;

       (vi)  The work experience of past incumbents in the job; and/or

       (vii)  The current work experience of incumbents in similar jobs.

Id. § 1630.2(n)(3). Although determination of what constitutes an essential job function is a fact-specific inquiry, summary judgment still may be appropriate on a properly developed factual record. See Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 141 (2nd Cir. 1995) (arising under Rehabilitation Act).

Reasonable accommodations include the following:

    Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position . . . .

29 C.F.R. § 1630.2(o)(1)(ii) (1995). Specific examples of

9

reasonable accommodations include

> job restructuring, part-time or modified work
> schedules, reassignment to a vacant position,
> acquisition or modification of equipment or devices,
> appropriate adjustment or modifications of
> examinations, training materials or policies, the
> provision of qualified readers or interpreters, and
> other similar accommodations for individuals with
> disabilities.

42 U.S.C.A. § 12111(9)(B) (West 1995). However, a reasonable accommodation does not include eliminating any of a job's essential functions. E.g., Borkowski, 63 F.3d at 140; Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991); McDonald v. Kansas Dep't of Corrections, 880 F. Supp. 1416, 1423 (D. Kan. 1995).

The defendant has moved for summary judgment contesting the plaintiff's claims on several grounds.[3] However, since the plaintiff has failed to demonstrate that there is a genuine issue

---

[3]The defendant first asserts that the plaintiff was not disabled within the meaning of the ADA, the first element of the Katz analysis. For the purposes of this summary judgment motion, the court finds that the plaintiff has made a sufficient showing that he was disabled at the time his employment was terminated to raise a genuine issue of material fact for trial as to his disability. The second Katz element is discussed in detail infra. As to the third Katz element, because the defendant asserts that the plaintiff did not suffer from a disability it also implicitly asserts that it did not discharge him because of a disability. However, the defendant has not contested that it discharged the plaintiff because of his perceived or actual inability to restrain juveniles. Therefore, the court finds that the plaintiff has sufficiently demonstrated, for purposes of withstanding summary judgment, that he was discharged because of his alleged disability.

10

of material fact with respect to the second Katz factor, that is the only factor that the court need discuss in detail. The relevant inquiry is whether, at the time of his discharge, the plaintiff was able to perform the essential functions of his job with or without a reasonable accommodation.

The defendant asserts that the ability to restrain students is an essential function of the remedial teacher position. In support of this assertion, it offers the following facts:

(1) The defendant determined that the job function is essential. Defendant's Memorandum of Law in Support of Motion for Summary Judgment, Ex. B, Affidavit of Sandra Platt, Manager of Human Resources for the New Hampshire Department of Health and Human Services ("Platt Aff.") ¶ 15 ("It was determined that the requirement to maintain the integrity and security of the facility was an essential job function that could not be eliminated."). The court finds this to be uncontested and conclusive evidence of CFR factor (i).

(2) The defendant prepared a job description prior to the plaintiff's disability which listed as "Accountabilities," inter alia, "[m]aintain[ing] the integrity of the secure care system through closely supervising students in classrooms . . . and through appropriately intervening in cases of possible AWOL, assault, or self-injury to provide for the safety of institution residents, staff and the community." Id., Ex. G, Supplemental Job Description for Remedial Teacher position (established 8/15/88 and last amended 9/10/90) at 1. The court finds this to be uncontested and conclusive evidence of CFR factor (ii).

11

(3)     The defendant required extensive training of all YDC employees in physical restraint techniques. Id., Ex. B, Platt Aff. ¶ 5 (Platt's recitation of training requirements for YDC employees with discussion of the plaintiff's personnel training report), Ex. C, Plaintiff's Answer to Defendant's First Set of Interrogatories at 6 (plaintiff recounting his attendance at mandatory monthly aggressive behavior management workshops). The court finds this to be uncontested but inconclusive evidence of CFR factors (iii), (vi), and (vii). And,

(4)     The defendant believed there to be a possible risk to the plaintiff and others if the plaintiff attempted to perform his job while unable to restrain students, including the possibility that the plaintiff might be used as a hostage. Id., Ex. D, Affidavit of Ronald Adams, Superintendent of the YDC ("Adams Aff.") ¶ 9. The court finds this to be contested and inconclusive evidence of CFR factor (iv).

The defendant has adduced facts to support its contention that the responsibility for restraining juveniles is an essential function of the job of remedial teacher at the YDC within the statutory and regulatory definitions. The defendant determined that the ability to restrain juveniles was important for remedial teachers and other YDC personnel, integrated a requirement to that effect into its official job description, and specifically trained staff members in techniques to perform this function, all in an effort to ensure the safety of everyone at the YDC. The court finds that the defendant's showing satisfies its

12

preliminary burden of demonstrating a lack of a genuine issue of material fact on the essential function issue.

In response, the plaintiff asserts that the ability to restrain juveniles is not an essential function of his former position. The plaintiff contends that: (1) the defendant has not produced sufficient evidence of the CFR factors to demonstrate the lack of a genuine issue of material fact to justify summary judgment; (2) the presence of a teacher's aide and the availability of cottage counselors meant that the plaintiff's help was not required to restrain students, and therefore that the security function is not essential to his individual position, see Complaint ¶¶ 25, 26; and (3) the fact that the plaintiff did not spend very much time restraining students (having done so only two times in the three years he was employed by the YDC), Barnfield Aff. ¶ 8.

However, the court does not find any of these arguments compelling. The plaintiff's first argument is general, and misconstrues either the burden-shifting framework applicable in the summary judgment context, the effect of the CFR factors, or both. In this case, the defendant bears the initial burden because it has sought summary judgment. However, the moving

13

party need produce neither all relevant evidence nor evidence as to all of the individual CFR factors to win on summary judgment but simply enough evidence to show that there is no genuine issue of material fact for trial. Where, as here, the court finds the moving party has met that initial burden, the non-moving party bears the burden of showing that there remains a genuine issue of material fact for trial. See Anderson, 477 U.S. at 256. The plaintiff cannot resist summary judgment merely by alleging that relevant facts exist that would support his position, but must instead produce specific facts. See id. To the extent that the plaintiff has failed to produce specific facts to demonstrate that there are genuine issues of material fact for trial, the plaintiff has failed to carry its burden of response to the summary judgment motion.

The plaintiff's second and third arguments are more specific but also fail. In his second argument he asserts that restraint of students is not an essential function for him because of the presence of a teacher's aide and the availability of cottage counselors. However, the plaintiff admits that the restraint procedure he himself was forced to follow on two occasions required both him and the teacher's aide to restrain the student

14

while they waited for a cottage counselor to arrive. The plaintiff has not explained how the procedure could work if he were unable to assist the teacher's aide before a cottage counselor arrived. He also has not controverted the defendant's assertion that YDC restraint techniques require two people for maximum safety and effectiveness. In his third argument, he asserts that the restraint function is not essential because he performed it infrequently. While infrequency is a factor to be considered (see CFR factor (iii)) it must be considered in context and not in a vacuum. The plaintiff has offered no additional facts beyond his mere assertion of infrequency. The defendant, while acknowledging that the plaintiff has only physically restrained students two times during three years of employment, attests that the instructor's constant ability to restrain students is required. Adams Aff. ¶ 5. The ability to restrain students promotes the safety of everyone at the YDC, and the concomitant deterrent effect implied in such an ability has a salutary effect on classroom discipline by deterring juveniles who might otherwise require physical restraint. See id. ¶¶ 6, 9. The plaintiff has not adduced facts to contest the defendant's showing that a YDC remedial teacher's ability to restrain

15

students remains essential despite the existence of other employees responsible for similar duties and the fact that the ability to restrain students is seldom exercised.

In the face of the evidence produced by the defendant, the plaintiff's response does not meet his burden of demonstrating that there are genuine issues of material fact for trial on the essential function issue. Accordingly, the court finds that the ability to restrain juveniles is an essential function of the job of remedial teacher at the YDC.

Despite the failure of his essential function argument, the plaintiff might still resist summary judgment by adducing evidence that he could perform this function with or without a reasonable accommodation. As to performing the security function with a reasonable accommodation, the plaintiff's only suggested accommodation is that the security function be assumed by the aide and the cottage counselors. However, as noted supra, a reasonable accommodation does not require the reassignment of essential job functions. See, e.g., Borkowski, 63 F.3d at 140; Gilbert, 949 F.2d at 642; McDonald, 880 F. Supp. at 1423. Because the plaintiff has suggested no other accommodation, the court finds that the plaintiff, at the time his employment was

terminated, could not perform the essential functions of his position with a reasonable accommodation.

The plaintiff's final contention is that he currently is able to perform all the essential functions of his position without a reasonable accommodation. In support of this argument, he asserts that at all times since September 1993 he has been able to perform all his duties as a remedial teacher, including restraint of juveniles. However, here the plaintiff's argument runs afoul of his own theory of the case, which rests on the claim that "the defendant's unlawful and discriminatory termination of his employment as a result of his disability or what was perceived or regarded to be a disability by the defendant, violates the ADA." Complaint ¶ 34 (emphasis added); see Malek v. Martin Marietta Corp., 859 F. Supp. 458, 467 (D. Kan. 1994) (ADA case indicating that discriminatory discharge and discriminatory failure to recall state separate claims); see also Daughtry v. King's Dept. Stores, Inc., 608 F.2d 906, 909 (1st Cir. 1979) (failure to rehire distinct from termination so continuing violation doctrine inapplicable). The plaintiff admits that he was discharged effective June 25, 1993. The plaintiff's ability to restrain students over two months after

17

his allegedly unlawful discharge is not relevant to the question of whether he could perform this essential function of his job at the time he was discharged. Because the plaintiff has not produced any evidence to rebut the medical report furnished by his own doctor indicating that the plaintiff could not restrain juveniles on June 25, 1993, no genuine issue of material fact remains -- the plaintiff was unable to restrain students at the time his employment was terminated.

Accordingly, the court finds that the defendant's termination of the plaintiff's employment did not violate the plaintiff's rights under the ADA, and grants summary judgment to the defendant on the plaintiff's ADA claim.

## Conclusion

The defendant's motion for summary judgment (document no. 11) is granted. The clerk is ordered to close the case.

SO ORDERED.

                                    _____
                                    Joseph A. DiClerico, Jr.
                                    Chief Judge

September 30, 1996

cc:  Catherine C. Catalano, Esquire
     Susanna G. Robinson, Esquire
     Martha A. Moore, Esquire