ADOLFO ROSARIO vs. M.D. KNOWLTON COMPANY & another.[1]

No. 99-P-2154.

Middlesex. January 10, 2002. - May 22, 2002.

Present: BROWN, KASS, & KANTROWITZ, JJ.

*Repose, Statute of. Negligence,* Statute of repose. *Practice, Civil,* Claim barred
by statute of repose, Statute of limitations. *Limitations, Statute of. Contract,*
Warranty. *Warranty. Consumer Protection Act,* Unfair or deceptive act.

Discussion of the statute of repose for an action of tort for damages arising
    out of any deficiency or neglect in the design, planning, construction, or
    general administration of any improvement to real property, G. L. c. 260,
    § 2B. [799-800]
A material handling lift was an improvement to real property within the mean-
    ing of G. L. c. 260, § 2B, where the lift was permanently installed and had
    the effect of making the second floor of the plaintiff's employer's
    manufacturing plant substantially more useful. [800]
The designer and manufacturer of an improvement to real property (a custom-
    designed material handling lift), made to the specifications provided by the
    party with which the designer-manufacturer contracted, was entitled to
    protection against a civil negligence action under the statute of repose,
    G. L. c. 260, § 2B, where the designer-manufacturer provided individual
    expertise and rendered particularized services in connection with the design
    and construction of the lift; moreover, the supplier of the lift was entitled
    to protection under the statute, where the supplier, by collaborating in the
    design of the lift, supervising its installation, and specifying and supervis-
    ing building modifications, also provided individual expertise and
    particularized services relating to the design and construction of an
    improvement to real property. [800-802]
In a civil action, a claim of breach of implied warranty was barred by the
    statute of repose, G. L. c. 260, § 2B, where the warranty claim essentially
    alleged the same elements as negligence claims that were also barred by
    the statute. [802-803]
A civil claim for breach of an express warranty arising out of the installation
    of a material handling lift was barred by the four-year statute of limita-
    tions, G. L. c. 106, § 2-725, where the plaintiff brought his claim almost
    ten years after delivery of the lift. [803]
The judge in a civil action properly dismissed the plaintiff's G. L. c. 93A
    claims on summary judgment after dismissing the negligence and breach
    of express warranty claims on which the c. 93A claims relied. [803]

[1]AFCO Industries doing business as AFCO Equipment Corporation.

CIVIL ACTION commenced in the Superior Court Department on October 7, 1997.

The case was heard by *Catherine A. White*, J., on motions for summary judgment.

*Allan E. Levin* (*David C. Levin* with him) for AFCO Industries.

*Rickie T. Weiner* for the plaintiff.

*Jeanne E. Demers* for M.D. Knowlton Company.

KANTROWITZ, J. The main issue raised concerns the applicability of the statute of repose, G. L. c. 260, § 2B. Adolfo Rosario sued the defendants, M.D. Knowlton Company (Knowlton) and AFCO Industries doing business as AFCO Equipment Corporation (AFCO), for a personal injury he sustained in 1996 when he became entangled with a hydraulic lift installed nearly a decade earlier.

Rosario claimed that the defendants were (1) negligent; (2) in breach of certain warranties; and (3) engaged in unfair or deceptive acts or practices in violation of G. L. c. 93A. Both defendants filed motions for summary judgment, arguing that Rosario's claims were barred by the statute of repose relating to actions of tort based on improvements to real property. The judge allowed Knowlton's motion, but denied AFCO's, finding that the record was unclear as to whether the type of activities performed by AFCO qualified as design, planning, construction, or general administration of an improvement to real property under the statute.

AFCO was permitted by a single justice to bring an interlocutory appeal from the denial of its motion for summary judgment, and Rosario appeals from the separate and final judgment entered in favor of Knowlton. We hold that both defendants are entitled to the protection of the statute of repose. Accordingly, we affirm the judgment in favor of Knowlton and reverse the order denying AFCO's motion.

*Background.*[2] In 1986, Rosario's employer, Come Play

---

[2]We gather many of the facts from the defendants' written statements of undisputed material facts, which they submitted with their summary judgment motions as required by rule 9A(b)(5) of the Rules of the Superior Court (1999). The rule reads as follows:

Products (Come Play), contacted AFCO[3] regarding the possible purchase of a material handling lift for its facility in Worcester. Michael Hatzopolas, also known as Michael Hatter (Hatter), an AFCO representative specializing in material handling consulting, visited Come Play's facility and evaluated the feasibility of installing a material lift for Come Play's needs. AFCO recommended a model EH-38F Stationary Flow-Thru Platform Type PowR-Conveyor, a custom-made[4] material hydraulic lift designed and manufactured by Knowlton.[5]

Hatter made several visits to Come Play to gather the specifications necessary for Knowlton to design and construct the lift. During these visits Hatter took measurements and made calculations necessary for Knowlton to design the lift, and recommended that building modifications be made to ensure its proper installation. Hatter also made multiple visits to the plant

---

"Each motion for summary judgment shall be accompanied by a concise statement, in consecutive numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried, with page or paragraph references to supporting pleadings, depositions, answers to interrogatories, admissions and affidavits . . . .

"Each opposition to a motion for summary judgment shall include a response, using the same paragraph numbers, to the moving party's statement of facts as to which the moving party claims there is no genuine issue to be tried [and], in consecutive numbered paragraphs, a concise statement of any additional material facts as to which the opposing party contends there is a genuine issue to be tried, with page or paragraph references to supporting pleadings, depositions, answers to interrogatories, admissions and affidavits . . . .

"For purposes of the motion for summary judgment, facts contained in a statement described in the first paragraph hereof shall be deemed to have been admitted unless controverted in the manner set forth in the second paragraph hereof."

As the motion judge noted, the plaintiff's oppositions did not contain responses to the defendants' statements; under rule 9A(b)(5), the facts set forth in the statements are thus "deemed to have been admitted."

[3]AFCO is a Massachusetts corporation engaged in the commercial material handling business, and is a distributor of Knowlton lifts.

[4]Although the style of lift had a model number, it was designed and manufactured to adjust to the requirements of a particular installation.

[5]Knowlton is a New York corporation that custom designs, manufactures, and assembles material handling equipment such as conveyors and lifts.

to check on the progress of those modifications. AFCO submitted the specifications to Knowlton. Based on Hatter's information and specifications, Knowlton gave AFCO a price quote and a custom-design configuration for the lift. Knowlton's design plans were then submitted to and approved by AFCO and by Come Play. In November, 1986, the lift was delivered to Come Play and installed by MJB Installations, a subcontractor employed by AFCO. AFCO inspected the lift after installation, and called the installer back to make adjustments. Neither AFCO nor Knowlton did any further work on the lift after December, 1986.

Nearly ten years later, on August 28, 1996, Rosario was severely injured by the lift while working with it. He filed his complaint in October, 1997.

*The statute of repose.* "As a statute of repose, G. L. c. 260, § 2B,[6] precludes recovery against those within the protection of the statute for any injury which occurs more than six years after the performance or furnishing of the design, planning, construction, or general administration of an improvement to real property." *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982).

It is undisputed that Rosario filed his claim more than six years after the lift was opened for use or was in the possession of Come Play. Therefore, the pivotal issue is whether the defendants and their activities fall within the protection of the statute. If there is no genuine issue of material fact as to whether the defendants were involved in the design, planning, construction or general administration of the lift at Come Play, then summary judgment is appropriate. See *Snow* v. *Harnischfeger Corp.*, 12 F.3d 1154, 1158 (1st Cir. 1993), cert. denied, 513 U.S. 808 (1994), citing *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. 636 (1992).

Section 2B applies to the defendants if they are protected actors and the lift is an improvement to real property. We analyze

---

[6]"Action of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner." G. L. c. 260, § 2B.

the latter issue first, since it will be the same as applied to both defendants.

*The lift as an improvement to real property.* The phrase "improvement to real property" is not defined in § 2B. Massachusetts courts have declined to follow a rigid fixture analysis in defining this term. See *Dighton* v. *Federal Pac. Elec. Co.*, 399 Mass. 687, 696, cert. denied, 484 U.S. 953 (1987). Instead, courts have found guidance in the following definition of "improvement" for purposes of § 2B: "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Conley* v. *Scott Prod., Inc.*, 401 Mass. 645, 647 (1988) (installation of insulation an improvement; so too, aluminum siding), quoting from Webster's Third New Intl. Dictionary 1138 (1961). See *Snow* v. *Harnischfeger Corp.*, *supra* at 1161.

The facts on the record show that Knowlton custom designed and manufactured the lift to the specifications supplied by AFCO, for eventual sale to, and installation in, the Come Play facility. Knowlton expended over 320 hours of labor in the manufacturing and assembly of the lift. The lift, which basically transported heavy materials to another floor, was permanently installed at the Come Play facility in Worcester. It had the effect of making the second floor of the plant substantially more useful to any occupant of the plant, whether owner or tenant. We agree with the motion judge that the lift is an improvement to real property.

*Protected actor status.* "[Section 2B] was intended not to apply to mere suppliers of standardized products, but only to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors — that is to say, to parties who render particularized services for the design and construction of particular improvements to particular pieces of real property." *Dighton* v. *Federal Pac. Elec. Co., supra.* See *Klein* v. *Catalano, supra* at 716-717. The issue is whether AFCO and Knowlton acted as mere materialmen or suppliers, who would not be afforded repose protection, or acted as architects, engineers,

contractors, surveyors or other protected actors, who would be afforded coverage. See *Dighton* v. *Federal Pac. Elec. Co., supra* at 694 n.10; *Snow* v. *Harnischfeger Corp., supra* at 1159.

"Ambiguity in the application of [G. L.] c. 260, § 2B[,] arises when it is unclear whether a party acted as a materialman or supplier rather than an architect, engineer, contractor, surveyor or some other protected actor. A party is not a protected actor when the party does not perform protected acts. Conversely, an actor such as a manufacturer or supplier may be protected if that actor becomes more than a 'mere' supplier by engaging in protected activities." *Ibid.* (citations omitted).

It is helpful to this determination to note again that the lift was a custom-designed product, as a court "must consider the motivation of the actor in producing the improvement. If the actor designed the improvement for public sale or for general use, then the actor is not protected because the actor is engaged in the activity of creating a fungible product. If, however, the improvement is produced for a particular project and to the specifications of an architect or an engineer, [G. L.] c. 260, § 2B[,] may protect the actor as someone engaged in the activity of designing a particularized improvement." *Id.* at 1160 (footnote and citations omitted).

Knowlton designed and manufactured a custom product, made to specifications provided by AFCO. The product was not "off the shelf." Knowlton provided individual expertise and rendered particularized services in connection with the design and construction of the lift. Knowlton is, therefore, entitled to protection under the statute of repose for tort actions.

AFCO's status as a protected actor is somewhat less clearly etched. While it acted as a supplier, did it also act in another capacity, as one affording individual expertise who rendered particularized services for the design and construction of an improvement to real property?

*McDonough* v. *Marr Scaffolding Co.,* 412 Mass. 636 (1992), is instructive. In *McDonough,* a young boy was fatally injured when he fell between bleachers at a skating rink. The defendants were Marr Scaffolding Company (Marr), who ordered, assembled and erected the bleachers, and Snyder Tank Corporation (Snyder), who designed, manufactured, and delivered the

bleachers. McDonough attempted to avoid the application of the statute of repose to Marr by suing Marr solely in its capacity of supplier, although Marr also acted as a contractor. The court held that McDonough could not avoid the statute of repose by "identifying Marr only by reference to its limited status as a supplier." *Id.* at 642.

Snyder also was entitled to protection by the statute of repose, as the record demonstrated that Snyder did not act as a "mere supplier," but designed the bleacher units at issue specifically for the particular rink. *Id.* at 644.

Here, the motion judge determined that AFCO performed the following: "evaluat[ed] the Come Play plant to determine whether it was possible to install a material lift, t[ook] measurements of the dimensions of the plant, ma[de] calculations necessary for the design of the lift, suppl[ied] the necessary specifications to Knowlton . . . , inspect[ed] the facility, ma[de] certain repair/renovation recommendations for the area where the lift was to be placed to accommodate and ensure its proper installation, inspect[ed] the progress of the renovations on 8-10 occasions before delivery, and enter[ed] into a subcontract agreement with MJB Installations to install the lift at Come Play."

Even if one acts as an unprotected actor, he may nonetheless be protected if he also engages in the types of activities protected by G. L. c. 260, § 2B. As in *McDonough*, AFCO provided individual expertise and particularized services relating to the design and construction of an improvement to real property; it collaborated in the design of the lift, and supervised its installation; it specified and supervised building modifications. See *Klein* v. *Catalano*, 386 Mass. at 717; *Dighton* v. *Federal Pac. Elec. Co.*, 399 Mass. at 695-696; *Snow* v. *Harnischfeger Corp.*, 12 F.3d at 1159-1161. As such, AFCO is a protected actor entitled to protection by the repose provision of G. L. c. 260, § 2B, despite AFCO's additional role as supplier of the product.

*Breach of implied warranty.* Rosario argues that his claim for breach of implied warranty was not barred by § 2B.

Although § 2B expressly applies only to actions of tort, Massachusetts courts have held that actions for breach of implied warranty are also barred by the statute of repose when the war-

ranty claims "essentially allege the same elements as the negligence claims." *McDonough* v. *Marr Scaffolding Co.*, *supra* at 642, citing *Klein* v. *Catalano*, *supra* at 719. If the cause of action for breach of implied warranty were allowed to proceed, the statute would not have its intended effect. *Klein* v. *Catalano*, *supra* at 719-720. Rosario's breach of implied warranty actions are identical to his negligence causes of action, which were rightly disposed of by summary judgment, and so are also barred by § 2B.

*Breach of express warranty.* Rosario also claims that Knowlton was in breach of an express warranty. Because the statute of limitations applicable to an express warranty claim has run, summary judgment on this point was also correct.

A claim for breach of an express warranty, an action in contract, is not governed by the statute of repose for tort actions set forth in G. L. c. 260, § 2B. *Coca-Cola Bottling Co. of Cape Cod* v. *Weston & Sampson Engrs., Inc.*, 45 Mass. App. Ct. 120, 128 (1998), citing *Klein* v. *Catalano*, *supra* at 708. An express warranty claim is an action based in contract rather than in tort. *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Engrs., Inc.*, 396 Mass. 818, 822 (1986). Therefore, the express warranty claim is subject to the four-year statute of limitations for contracts under G. L. c. 106, § 2-725.[7] The cause of action accrued for statute of limitations purposes at the time of delivery of the lift, in November, 1986. See *ibid.* See also *New England Power Co.* v. *Riley Stoker Corp.*, 20 Mass. App. Ct. 25, 27 (1985). Because Rosario did not file his complaint until 1997, any claim for breach of an express warranty is barred by the statute of limitations.

*Chapter 93A.* Rosario's c. 93A count is premised on claims dismissed on summary judgment. This count falls with them. See *GTE Prod. Corp.* v. *Broadway Elec. Supply Co.*, 42 Mass. App. Ct. 293, 302 (1997).[8]

[7]Because the lift at issue is a good, the Uniform Commercial Code applies, see G. L. c. 106, § 2-105(1); *Cambridge Plating Co.* v. *NAPCO, Inc.*, 991 F.2d 21, 24 (1st Cir. 1993), notwithstanding AFCO's dual roles as a supplier and protected actor.

[8]Rosario's claim of prejudice due to court-imposed discovery limitations, allegedly preventing him from showing that the lift was not custom-designed,

The order denying the motion for summary judgment with respect to AFCO is reversed and judgment is to enter for AFCO. The judgment with respect to Knowlton is affirmed.[9]

*So ordered.*

but rather was part of a general product line of lifts, is without merit. It was not improper for the judge to limit discovery. See Mass.R.Civ.P. 26(c), as amended, 423 Mass. 1401 (1996). Also, given Rosario's Superior Court rule 9A(b)(5) shortcomings, see note 2, *supra,* the issue of whether the lift was custom-designed is foreclosed. Even were it not, this avenue of discovery was of questionable utility here. See *Snow* v. *Harnischfeger Corp.,* 12 F.3d at 1158 (although the defendant made thousands of cranes, the one crane at issue was still unique; "A crane can be designed for a particular location and specialized function and still retain the essential characteristics common to industrial cranes").

[9]We decline to assess costs and sanctions against Rosario as requested by the defendant Knowlton.