GILBERT SONIN & another[1] *vs.* MASSACHUSETTS TURNPIKE
AUTHORITY & another.[2]

No. 03-P-256.

Hampden. March 2, 2004. - June 8, 2004.

Present: DUFFLY, KANTROWITZ, & GREEN, JJ.

*Massachusetts Turnpike Authority. Negligence,* Design. *Repose, Statute of.*

This court concluded that G. L. c. 260, § 2B, a statute of repose for negligence
claims related to real property of a public agency, barred the plaintiffs'
claims raised after the six-year limitations period and arising from the al-
leged negligent design of a portion of the Massachusetts Turnpike
[288-290]; moreover, the plaintiffs' claims were not rejuvenated for
purposes of § 2B by the defendant authority's redesign and improvement
of the highway two miles from the place where the accident triggering the
claims occurred [291].

CIVIL ACTION commenced in the Superior Court Department on
February 10, 1997.

The case was tried before *Constance M. Sweeney*, J.

*Alexander J. Wulwick*, of New York (*Joseph P. Musacchio*
with him) for the plaintiffs.

*Nancy Frankel Pelletier* for Massachusetts Turnpike
Authority.

GREEN, J. On appeal, the plaintiffs challenge the ruling of a
Superior Court judge, on the defendants' motion for a directed
verdict, that G. L. c. 260, § 2B, bars the plaintiffs' claims aris-
ing from the alleged negligent design of a portion of the Mas-
sachusetts Turnpike. We affirm the judgment.

*Background.* While driving westbound on the Massachusetts
Turnpike at approximately midnight on May 4, 1996, the

---

[1]Rita Sonin.

[2]Howard, Needles, Tammen & Bergendoff. On February 25, 2004, the par-
ties filed a stipulation of dismissal as to this defendant.

plaintiff, Gilbert Sonin, struck a disabled vehicle in the right travel lane. There was no breakdown lane at the side of the highway in that location. Sonin was traveling at a moderate rate of speed, but the night was foggy and Sonin did not see the disabled vehicle in front of him until he was too close to avoid it. There was testimony that he was unable to move into the adjacent left lane because another vehicle was traveling in that lane next to him. Sonin sustained severe injuries as a result of the collision.

On February 10, 1997, Sonin filed a four count complaint alleging, inter alia, that the defendant Massachusetts Turnpike Authority (authority) negligently designed the area of the highway where the accident occurred (by failing to provide a breakdown lane alongside the highway), and negligently failed to warn motorists of the absence of a breakdown lane.[3] At the close of the evidence, the trial judge allowed the defendants' motion for a directed verdict on the plaintiffs' claims for negligent design, on the ground that they were time-barred, but allowed the negligent failure to warn claim to go to the jury.[4]

*Discussion.* The plaintiffs press two points on appeal. First, they argue that the authority, as owner of the premises alleged to have caused the injury, may not employ G. L. c. 260, § 2B, to bar a claim against it. Second, they contend that their claim for negligent design was rejuvenated when, in 1992, the authority redesigned and improved the highway in the vicinity of the accident without adding a breakdown lane.

---

[3]Count one of the complaint asserted both theories of negligence and asserted a claim for damages on behalf of plaintiff Gilbert Sonin. Specifically, paragraph 12 of the complaint alleged that the authority "negligently designed the area of the roadway in the vicinity of the accident locus by failing to incorporate a breakdown lane for disabled vehicles," and paragraph 13 alleged that the authority "was also negligent in failing to warn motorists that a breakdown lane was unavailable in the vicinity of the accident locus and of the foreseeable danger that motorists would encounter disabled vehicles in the travel portion of the roadway." Count two asserted a claim for loss of consortium on behalf of plaintiff Rita Sonin, premised on the same theories of negligence. Counts three and four asserted claims against the operator of the disabled vehicle and were dismissed by stipulation prior to trial.

[4]The jury found that the authority negligently failed to warn plaintiff Gilbert Sonin of the absence of a shoulder alongside the highway, but that the negligence was not a proximate cause of the plaintiffs' injuries. The plaintiffs do not challenge that determination.

As a statute of repose, G. L. c. 260, § 2B, bars any claim for negligence in the design, construction, or administration of improvements to real property of a public agency that is not asserted within six years following completion of the improvements, without regard to when the deficiency in design or construction is first discovered.[5] See *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982). The plaintiffs direct our attention to language in *Klein* explaining that the statute "grants immunity only to architects, engineers, contractors and others involved in the design, planning, construction, or general administration of improvements to real property and denies the same protection to materialmen, owners, tenants and others in possession or control." *Id.* at 717. But the statute "defines the protected actor largely by reference to protected acts. The body of § 2B names no class of protected actors. Rather, its terms extend protection to persons allegedly responsible for acts, i.e., those who commit 'any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property.' " *Dighton* v. *Federal Pac. Elec. Co.*, 399 Mass. 687, 694, cert. denied, 484 U.S. 953 (1987), quoting from G. L. c. 260, § 2B, as amended, St. 1984, c. 484, § 53. Accordingly, insofar as counts one and two of the complaint assert claims for negligent design of the turnpike, § 2B bars the claims as untimely. See

_____

[5]As amended by St. 1984, c. 484, § 53, the pertinent language of the statute is as follows:

"Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property of a public agency, as defined in said section thirty-nine A [of chapter 7] shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall actions be commenced more than six years after the earlier of the dates of: (1) official acceptance of the project by the public agency; (2) the opening of the real property to public use; (3) the acceptance by the contractor of a final estimate prepared by the public agency pursuant to chapter thirty, section thirty-nine G; or (4) substantial completion of the work and the taking possession for occupancy by the awarding authority."

The parties do not dispute that the turnpike roadway is an "improvement to real property" within the meaning of the statute. See *Milligan* v. *Tibbetts Engr. Corp.*, 391 Mass. 364, 368 (1984). The turnpike was designed and constructed during the 1950's, well more than six years before the accident giving rise to the plaintiffs' claims.

*Sullivan* v. *Iantosca*, 409 Mass. 796, 799 (1991) (count III of complaint against defendant owner, alleging negligent construction, barred by § 2B).

As *Sullivan* illustrates, an owner that participates in the design or construction of improvements to real property may be liable for damages arising from such improvements on a basis independent of a claim of negligence in the design or construction. In *Sullivan,* a defendant owner was held subject to liability as seller of residential property under claims for deceit and for breaches of implied covenants of good workmanship and of good faith and fair dealing. See *id.* at 799-800. Similarly, in *Milligan* v. *Tibbetts Engr. Corp.,* 391 Mass. 364, 365 (1984), a plaintiff was allowed to proceed against a defendant municipality on a claim of negligent maintenance of a roadway even though its claim of negligent design against the defendant engineering firm was barred by § 2B. Indeed, in the present case, the trial judge left for the jury the plaintiffs' claims against the authority for its failure to warn of the absence of a breakdown lane.

By its clear and express terms, § 2B limits the period for bringing any claim arising from negligent design without regard to whether the owner or another party has committed the alleged negligence. Put another way, an owner that participates in the design of improvements to real property is as entitled to the protection of § 2B as any other actor involved in such design or construction — but only with respect to a claim for negligence in the design.[6] The trial judge properly dismissed the plaintiffs' claims for negligent design and properly submitted to the jury the plaintiffs' claims for failure to warn.

---

[6]In its argument, the authority asks us to draw a distinction between an owner actively involved in design and construction and a "passive owner." The statute draws no such distinction, and we think the argument misses the mark. Instead, it is the nature of the claim, as one for negligent design, that determines applicability of the statute to a case such as the present one. There is no dispute that the plaintiffs' claim is based on the authority's alleged negligence in the turnpike design; that is precisely the manner in which the claim is framed in the complaint. See note 3, *supra.* Compare *Fine* v. *Huygens, DiMella, Shaffer & Assocs.,* 57 Mass. App. Ct. 397, 402-404 (2003) (discussing applicability of § 2B to suppliers of mass produced construction materials, as distinct from custom designed building components, to a claim

The plaintiffs' argument that the period for bringing a claim for negligent design began to run anew in 1992 rests on the premise that work on the highway at that time sufficiently modified the highway to constitute a new improvement to real property, thereby compelling the addition of a breakdown lane as part of a proper design for the work. We pass the question whether widening lanes or installing a "jug handle turnaround" would, as the plaintiffs claim, constitute a sufficient modification to trigger a new period for claims of negligent design, because there is sufficient evidence in the record to support the trial judge's finding that such work ended approximately two miles distant from the location of the accident. The only work conducted in 1992 on the highway in the location of the accident was "milling and repaving" of the highway surface, work fairly characterized as routine maintenance rather than "improvement to real property" within the meaning of the statute. See *Dighton* v. *Federal Pac. Elec. Co.*, 399 Mass. at 697 n.12.; *Coca-Cola Bottling Co. of Cape Cod* v. *Weston & Sampson Engrs., Inc.*, 45 Mass. App. Ct. 120, 127 n.9 (1998).

*Judgment affirmed.*

---

under G. L. c. 93A based on a breach of an implied warranty of merchantability).

Where the claim is for negligent design, it seems entirely appropriate to extend the protection of § 2B to an owner, to the extent of the owner's involvement in the design. Conversely, to the extent the owner has no involvement in design activities, it would be anomalous to hold the owner liable on a claim of negligent design, except to the extent the owner may be vicariously or derivatively responsible for the design activities of its contractors.