Wrenn, Daniel M., J.
National Grid has filed a motion for summary judgment, arguing that (1) Hansbury’s claims are barred by the Statute of Repose relating to actions of tort based on improvements to real property, (2) National Grid owed no duty of care to Hansbury, and (3) Hansbury’s claims are barred by the Recreational Use Statute. Summary judgment is a “device to make possible the prompt disposition of controversies on their *262 merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved." Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact for trial either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Aparty opposing summary judgment cannot successfully avoid summary judgment by merely raising “vague and general allegations of expected proof," see Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976), or “unsubstantiated speculation as to what future evidence might show.” See Hanover Ins. Co. v. Leeds, 42 Mass.App.Ct. 54, 60 n.6 (1997). Once the moving party has come forward with evidence demonstrating that there is no genuine issue of material fact, the burden shifts to the opposing party to present factual materials which are admissible at trial as evidence to support its claim or defense. See Community Nat’l Bank, 369 Mass. at 553. This is an affirmative burden and cannot be left to surmise, conjecture, or imagination. See Alhom v. Wareham, 371 Mass. 621, 626 (1976).
This court finds that the Defendant has successfully demonstrated the absence of a genuine dispute of material fact by showing that the plaintiff has no expectation of proving an essential element of his case at trial. See Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716. Both (1) the Massachusetts Statute of Repose relating to actions of tort based on improvements to real property, and (2) the absence of a duly of care, prevent Hansbuiy from proving his claims at trial. Therefore, summary judgment is entered in favor of the Defendant, National Grid (USA), Inc.
I. The Massachusetts Statute of Repose Bars the Plaintiff s Claims
The Massachusetts Statute of Repose, G.L.c. 260, §2B, bars any claim for negligence arising out of the design, construction, or general administration of improvements to real property that is not asserted within six years following the opening of the improvement or its substantial completion. See Klein v. Catalano, 386 Mass. 701, 702 (1982). The statute provides no specified “class of protected actors . . . [I]ts terms extend protection to persons allegedly responsible for acts, i.e., those who commit ‘any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property.’ ” See Dighton v. Fed. Pac. Elec. Co., 399 Mass. 687, 694 (1987) (quoting G.L.c. 260, §2B). The Defendant argues that the Plaintiffs claims are barred by the Statute of Repose because the Plaintiffs claims arise out of a deficiency or neglect in the design, construction, or general administration of the utility pole and the complaint was filed nearly thirteen years after the installation of the utility pole and support cable. The Plaintiff opposes the Defendant’s motion by characterizing his claims as negligent maintenance and negligent failure to warn, rather than negligent design or construction. The Plaintiff therefore argues that the Statute of Repose does not apply and that his claims are not time-barred because the duties to maintain and to warn constitute ongoing responsibilities of the Defendant.
A. The Plaintiffs Claims Arise Out of the Design or Construction of Utility Pole 5-1
Whether a defendant’s activities fall within the Statute of Repose is a question of law. See McDonough v. Marr-Scaffolding Co., 412 Mass. 636, 640 (1992). Once a defendant establishes that a complaint is putatively covered by the statute, the burden shifts to the plaintiff to show facts to the contrary. See McGuinness v. Cotter, 412 Mass. 617, 620 (1992). To support his argument that the Plaintiffs claims are covered by the Statute of Repose, the Defendant cites to Brown v. United States, 514 F.Sup.2d 146 (D.Mass. 2007). The facts of Brown closely parallel those of the instant case.
In Brown, the plaintiff suffered paralyzing injuries in 2002 after he lost control of his motorcycle while making a turn on a semi-rural public highway and struck a utility pole located along a curve in the road and situated inside a guardrail approximately thirteen inches from the roadway. See 514 F.Sup.2d at 148. Boston Edison installed the utility pole in 1964. Id., at 150. The guardrail was installed in 1990 by an unknown party. Id. In 2004, the plaintiff brought tort claims against Boston Edison alleging that the company was negligent in its siting and maintenance of the utility pole. See id., at 149, 152. Boston Edison moved for summary judgment pursuant to the Statute of Repose, G.L.c. 260, §2B and the court entered summary judgment in favor of the defendant on this ground. Id.
Just like Hansbury in the instant case, the plaintiff in Brown sought to avoid the application of the Statute of Repose by arguing that his claims did not arise from the “design, planning, construction or general administration” of the pole. Id., at 155. Rather, the plaintiff contended that “his claims [were] not based on improper placement of the pole, but on the dangerous condition that was created when the guardrail was installed in 1990,” and that the defendant’s negligence arose “from its failure to remedy the dangerous and ongoing condition caused by the erection of the guardrail alongside, and on the wrong side, of the pole.” Id. at 155-56 (internal quotations omitted). The plaintiff argued that Boston Edison’s negligence was attributed to their failure to remedy an after-arising “defect.” Id., at 156. Hansbuiy makes the same argument — that the Statute of Repose should not apply because National Grid’s negligence is not based on the design or construction of the pole or guy wire, but rather on “its failure to remedy the danger *263 ous and ongoing condition caused by the erection of the [bike path] alongside . . . the pole.” See id.
The Brown court ruled that the plaintiff could not escape the Statute of Repose with such an argument and that his claim was barred because far more than six years had passed since the erection of the utility pole. Id. The court held that the plaintiffs claim still arose from the “design, planning, construction or general administration” of the pole despite the plaintiffs argument that the defendant negligently failed to inspect and remedy the dangerous defect. See id. The court determined that a “defect” (an “imperfection or fault inherent to an object”) in thé utility pole itself could not be “created by the mere juxtaposition of two objects that are totally unrelated to one another,” like the pole and the guardrail. Id., at 156-58.
In the instant case the Statute of Repose applies for the same reasons. The alleged “defect” that caused the Plaintiffs accident did not exist until 2001, when a bike path — an object “totally unrelated” to the utility pole and guy wire — was constructed underneath the guy wire. See id. The Plaintiffs claims still arise from the design, planning, construction, or general administration of the pole, despite the Plaintiffs argument in favor of negligent maintenance or negligent failure to warn. See id., at 155-56. The Plaintiffs injuries were directly caused by the location of the guy wire, which National Grid had not relocated, replaced, or altered since its installation in 1997. Although a dangerous condition was caused by the bike path (like the guardrail in Brown), the actual physical contact occurred between Hansbuiy and the guy wire and therefore Hansbuiy’s claim still relates to the design and placement of the Defendant’s pole. Because the injury occurred more than ten years after installation of the pole and guy wire (and the complaint was filed thirteen years after installation), the Plaintiffs negligence claim is barred by the six-year Statute of Repose. See G.L.c. 260, §2B.
In support of his argument that his claims escape the Statute of Repose, the Plaintiff cites only to Sonin v. Massachusetts Tumpike Authority, 61 Mass.App.Ct. 287 (2004). He contends that Sonin supports his theory that while the Statute of Repose would bar a claim against the Defendant for negligent design or construction, it would not bar claims against the Defendant for negligent maintenance or failure to warn. His interpretation of Sonin on this point is not entirely accurate. In Sonin, the plaintiffs vehicle struck a disabled vehicle stopped in the right travel lane of the Massachusetts Turnpike along a stretch of the road that did not have a breakdown lane. See 61 Mass.App.Ct. at 287-88. The plaintiff sued the Massachusetts Turnpike Authority (the owner and original designer of the highway) for negligent design and negligent failure to warn motorists of the absence of a breakdown lane. Id., at 288. The trial judge directed a verdict in favor of the MTA on the negligent design claim pursuant to the Statute of Repose, but he permitted the negligent failure to warn claim to go to the jury based on the MTA’s status as a “landowner.” Id. The Appeals Court affirmed the ruling that a landowner who participates in the design or construction of an improvement to his property, such as the MTA, is immune from tort claims arising from its design and construction activities filed beyond the repose period, but not immune from independent claims against it arising from its status as a landowner who owes a separate duty. See id., at 290. The court stated that “an owner that participates in the design or construction of improvements to real property may be liable for damages arising from such improvements on a basis independent of a claim of negligence in the design or construction.” Id. see also Sullivan v. Iantosca, 409 Mass. 796, 799-800 (1991) (holding that defendant-owner was subject to' liability as seller of residential property under claims for deceit and for breaches of implied covenants of good workmanship and of good faith and fair dealing); Milligan v. Tibbetts Engr. Corp., 391 Mass. 364, 365 (1984) (allowing plaintiff to proceed against defendant-municipality on claim of negligent maintenance of a roadway even though its claim of negligent design against defendant-engineering firm was barred by §2B). Therefore, but-for the defendant’s status as the landowner, the plaintiffs claims would have been barred by the Statute of Repose. See id.
The Plaintiffs application of Sonin to the instant case is thus incorrect as National Grid was not the landowner of the premises where the bicycle accident occurred (unlike the MTA owning the strip of highway where the car accident occurred). As the next section of this opinion explains, National Grid did not owe any separate duty of care to the Plaintiff, rather it was the Town of Amesbuiy who owed the duty of care as landowner. The Plaintiffs claims arise from the design and construction of Utility Pole 5-1 and not from any independent duty of National Grid as a landowner. Plaintiff cannot escape the reach of the Statute by characterizing Defendant’s actions as a negligent failure to maintain or a negligent failure to warn.
B. A Utility Pole is Considered an Improvement to Real Property by Massachusetts Courts
Due to the fact that G.L.c. 260, §2B, fails to provide a list of protected actors, this court must determine whether utility poles like the one at issue are considered “improvements to real property” under the Statute. See Dighton, 399 Mass. at 694. The court in Klein v. Catalano held that §2B “grants immunity only to architects, engineers, contractors and others involved in the design, planning, construction, or general administration of improvements to real property and denies the same protection to materialmen, owners, tenants and others in possession or control.” 386 Mass. At 717. But ultimately the statute “defines the protected actor largely by reference to protected acts.” Id.; Dighton, 399 Mass. at 694.
Massachusetts courts have declined to follow a rigid fixture analysis in defining the term “improvement.”
*264 Rosario v. M.D. Knowlton Co., 54 Mass.App.Ct. 796, 800 (2002); see also Dighton, 399 Mass. at 696. Instead courts have found guidance in the following definition of “improvement" for purposes of §2B: “a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.” Rosario, 54 Mass.App.Ct. at 800 (quoting from Webster’s Third New Intl. Dictionary 1138 (1961)); Conley v. Scott Prod., Inc., 401 Mass. 645, 647 (1988). Employing this definition, the Court in Brown concluded that a utility pole installed along a semi-rural public highway was an “improvement” under the statute and granted summary judgment to a public utility company defendant (Boston Edison) pursuant to G.L.c. 260, §2B. 514 F.Sup.2d at 148. The Brown Court also relied upon Pippin v. Potomac Elec. Power Co., 132 F.Sup.2d 379, 391 (D.Md. 2001), and Montaup Elec. Co. v. Ohio Brass Corp., 561 F.Sup. 740, 749 (D.R.I. 1983), where the courts concluded that a utility pole and electrical transmission line, respectively, were “improvements to real property” under applicable statutes of repose. See Brown, 514 F.Sup.2d at 156. While the argument can certainly be made that property owners do not generally value the presence of utility poles on their land, the Brown Court ultimately held that the utility pole “adds value to the property in which it sits by facilitating the delivery of electric power to customers on the adjacent land.” See id., at 157-58.
Based on this reasoning, National Grid’s erection of Utility Pole 5-1 in connection with the installation of its electrical distribution line in 1997 was a permanent “improvement to real properly” under §2B. The pole and guy wire were installed in order to provide electrical service to “customers on the adjacent land” or to properties located along the distribution line. See id. The pole provides “a precious and utilitarian commodity — electricity — to its customers.” See Montaup, 561 F.Sup. at 748-49. National Grid expended labor and money during installation and made the property and easement thereon more valuable. National Grid is thus a protected actor under §2B and the six-year statute of repose applies.
II. There Was No Violation of a Duty Imposed under a C.M.R. Promulgated by the Department of Public Utilities
The Plaintiff incorrectly argues that 220 C.M.R. 125.20, which requires utility companies to make “visual observations of exposed components of transmission lines twice per calendar year,” codifies a duty of care which requires National Grid to inspect the subject utility pole. This regulation only applies to “electric transmission lines operating at alternating current voltages over 50,000 volts phase to phase in overhead and underground construction.” See 220 C.M.R. 125.10(1)(a). Neither party disputes the fact that Utility-Pole 5-1 is part of a National Grid “distribution” line rather than a “transmission” line. Furthermore, National Grid’s distribution line operates at 4,160 volts, phase to phase, and 2,400 volts, phase to ground, far below the 50,000-volt threshold mandated by the C.M.R.
In addition to requiring bi-annual inspection of this category of large-scale, high-voltage transmission lines, the Massachusetts Department of Public Utilities also promulgated a C.M.R. for underground transmission lines. See 220 C.M.R. 125.30. Yet, the Department never addressed the type of distribution line at issue in this case in any comparable C.M.R It can thus be inferred that the Department made a conscious decision not to impose a duty to maintain, inspect, or repair on this particular type of utility pole. Therefore, no C.M.R. imposed a regulatory duty on National Grid to inspect and maintain Utility Pole 5-1, and this section of the Plaintiffs argument must fail. See generally Boston Gas Co. v. City of Newton, 425 Mass. 697 (1997) (State regulation of public utility industry, which has long been recognized as thoroughly regulated).
III. There Was No Legal Duty of Care Owed by National Grid
The Defendant argues that, even if the Statute of Repose did not apply, there was no independent duty to inspect, warn, or maintain[1] owed by National Grid because the Plaintiffs accident was not reasonably foreseeable at the time the utility pole was installed in 1997, nor did such a duty arise during the years leading up to the Plaintiffs accident. This court agrees.
To recover for negligence, a plaintiff must show “the existence of an act or omission in violation of a . . . duty-owed to the plaintiff by the defendant.” See Cottan v. CVS Pharmacy, 436 Mass. 316, 320 (2002) (quoting Dinsky v. Framingham, 386 Mass. 801, 804 (1982)). While the scope of a duty is an appropriate question for a jury, the existence of a legal duty is a question of law for the court. Brown, 514 F.Sup.2d at 152; Jupin v. Kask, 447 Mass. 141, 146 (2006). Where a defendant is determined to owe no duty of care, summary judgment must be granted. Brown, 514 F.Sup.2d at 152; see Westerback v. Harold F. LeClair Co., Inc., 50 Mass.App.Ct. 144, 146 (2000) (“Questions of reasonable foreseeability are ordinarily left to the jury, but the judge may properly decide them as a question of law where the harm suffered, although within the range of human experience, is sufficiently remote in everyday life as not to require special precautions for the protection of patrons”).
Massachusetts courts have recognized that “(a]s a general principle of tort law, every actor has a duty to exercise reasonable care to avoid physical harm to others.” See Remy v. MacDonald, 440 Mass. 675, 677 (2004). This duty of care derives from the foreseeability of the harm caused to others by a defendant’s acts or omissions. See Restatement (Second) ofTorts §302, comment “a” (1965). A defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous. Coombes v. Florio, 450 Mass. 182, 187-88 (2007) (and cases cited). “If no such duty exists, *265 a claim of negligence cannot be brought.” See Remy, 440 Mass. at 677; Coombes, 450 Mass. at 188.
Hansbuiy has introduced no evidence indicating that his accident was reasonably foreseeable when National Grid installed Utility Pole 5-1 in 1997. To the contrary, the bike path used by Hansbuiy was not constructed until four years after the installation of the utility pole, and there were no public walkways, bike paths, or roads in the vicinity of pole in 1997. Upon installation of the pole, there was no way for the Defendant to foresee that a bike path would be constructed directly underneath the guy wire.
Hansbuiy has presented no evidence to counter National Grid’s assertion that, during the period of years in between the pole’s installation and the Plaintiffs accident, National Grid received no complaints concerning the location of the pole or guy wire, no notice of any incidents or injuries relating to the pole or guy wire, no requests to move or alter the pole or guy wire, and no notice of any potentially unsafe conditions relating to the pole or guy wire. Hansbuiy has presented no evidence showing that National Grid was even aware that the bike path was in existence before the day of the accident. Finally, Hansbury has presented no evidence suggesting that National Grid should have become independently aware of the bike path or its proximity to the guy wire and pole during the years leading up to the accident.
Just as Boston Edison in Brown had no reason to be aware of the dangerous condition caused by the later-in-time construction of the guardrail behind the utility pole, National Grid had no reason to be aware of the dangerous condition caused by the later-in-time construction of the bike path underneath the guy wire. See 514 F.Sup.2d at 152-55. In Brown, the plaintiff sought to demonstrate foreseeability by introducing police logs that listed twenty-eight prior accidents in the vicinity of the utility pole over an eight-year period. Id., at 154. Yet such evidence was insufficient to show foreseeability because the pole itself was never involved in an accident, and no accident was introduced where a guardrail increased the danger of a motorist colliding with a utility pole. Id., at 154-55. Similarly in the instant case, the Plaintiff has failed to introduce any prior accidents involving Utility Pole 5-1. Nor has the Plaintiff introduced an accident where an after-arising man-made structure exacerbated the danger posed by a guy wire or utility pole. The Brown court found no duty of care existed on the part of Boston Edison because it could not have reasonably anticipated the plaintiffs accident. Id., at 155.
The First Circuit Court of Appeals, in reviewing Brown, affirmed the trial court’s ruling that summaiy judgment was proper. See Brown v. U.S., 557 F.3d 1, 7 (2008). The First Circuit agreed that the plaintiffs accident was not reasonably foreseeable, stating that “(n]o reasonable juiy could conclude that Boston Edison should have realized, when it originally placed or replaced Pole 16, that the pole’s location in relation to the guardrail posed an unreasonable risk to the traveling public . . . [because] the guardrail did not exist until approximately 1990, and Boston Edison most recently replaced the pole in 1964, twenty-six years prior.” Id. The First Circuit emphasized the fact that the guardrail had never channeled anyone into the pole before the plaintiff s accident, that the pole itself had never been struck, and that the plaintiff had failed to produce evidence that the dangerous condition had been brought to Boston Edison’s attention. See id.
“Additionally, Massachusetts courts do not recognize a continuing duly [on the part of utility companies] to inspect the location of all of its utility poles in order to determine whether changing road conditions ha[ve] made the poles a risk to travelers.” Id., at 7 n.8; see also Coates v. S. Md. Elec. Coop., Inc., 354 Md. 499, 731 A.2d 931 (1999) (concluding that a utility company is “under no tort duty to make any massive engineering inspection of all of [its] poles . . . existing along the streets and roads of the State”); Miller v. Highway Comm’r, 344 Ill.App.3d 1157, 279 Ill.Dec. 925, 801 N.E.2d 599, 606 (2004) (declining to impose on the utility company a duty that would require the company to “continuously monitor changes in road and other relevant conditions to determine whether a particular utility pole had been placed in a dangerous location”); Afarian v. Mass. Elec. Co., 449 Mass. 257, 265-66 (2007) (“In view of our society’s dependence on the services supplied by utility companies, and the public benefit of receiving those services, public policy favors some limitation on the liability of utility companies”). No judicial decision has imposed such a vast precautionaiy duty on utility companies, and the few courts that have directly considered whether such a duty exists have concluded that it does not. Brown, 557 F.3d at 7 n.8.
The Town of Amesbury was the owner of the land where the accident occurred and thus had the responsibility to maintain the bike path and warn users of potentially dangerous conditions of which it was aware or of which it reasonable should have been aware. See O’Sullivan v. Shaw, 431 Mass. 201, 204 (2000) (an owner or possessor of land owes a duty of reasonable care to maintain his property in a reasonably safe condition and to warn visitors of any unreasonable dangers known or reasonably knowable). The duties owned by landowners, possessors, or occupants do not extend to holders of easements, like National Grid in the instant case. See Lowell v. Piper, 31 Mass.App.Ct. 225, 229 (1991) (“An easement is an interest in land in the possession of another. It is not, itself, a possessory interest”); Barker v. Boston Market Terminal Co., 58 Mass.App.Ct. 1110, *2 (2003) (unpublished) (noting there is no affirmative duty on the part of an easement holder to make repairs or perform maintenance on the servient estate).
Lastly, there is no special relationship between National Grid and the Plaintiff which could give rise to a duty to warn. See Feinstein v. Beers, 60 Mass.App.Ct. 908, 909 (2004) (noting requirement of *266 a special relationship between defendant and plaintiff to impose duty to warn of dangerous condition); Costa v. Boston Redsox Baseball Club, 61 Mass.App.Ct. 299, 302 (2004) (holding special relationship exists between landowner or controller and persons lawfully on the land giving rise to a duty to warn). This special relationship concept applies to duties owed by landowners, possessors, or occupants and not to holders of easements like National Grid. See Piper, 31 Mass.App.Ct. at 229; Barker, 58 Mass.App.Ct. at *2.
For the foregoing reasons, this court finds that no reasonable jury could conclude that National Grid should have realized, upon installation of the pole and during the years leading up to the accident, that the guy wire’s location posed an unreasonable risk to the general public. The Plaintiff has failed to introduce any evidence that the pole or wire had ever been struck or that the alleged dangerous condition was ever brought to National Grid’s attention before the date of the accident. Therefore, the Plaintiffs injury was not reasonably foreseeable, National Grid did not owe a duty of care to the Plaintiff, and therefore summary judgment is proper.
IV. The Massachusetts Recreational Use Statute Does Not Apply
The Massachusetts Recreational Use Statute, G.L.c. 21, §17C, is not applicable in this case. While the municipality of Amesbury, by virtue of allowing the public to use its bike path, could rely on the protections of this statute, National Grid did not have the authority to permit or deny the free, recreational use of the bike path. G.L.c. 21, §17C states:
Any person having an interest in land including the structures, buildings, and equipment attached to the land, including without limitation, railroad and utility corridors, easements and rights of way . . . who lawfully permits the public to use such land for recreational . . . purposes without imposing a charge or fee thereof. . . shall not be liable for personal injuries or property damage sustained by such members of the public . . . while on said land and in the absence of willful, wanton or reckless conduct by such person.
The legislature’s purpose in enacting the statute was to “strike a balance between encouraging public access to private land and protecting landowners from liability for injuries ... in the ‘absence of williul, wanton or reckless conduct’ by the landowner.” Ali v. City of Boston, 441 Mass. 233, 236-37 (2007) (quoting G.L.c. 21, §17C).
The Defendant argues that the statute applies and thereby bars the Plaintiffs claim because National Grid owns an easement on the land and imposed no fee on the public for using the bike path. This argument fails because the statute indicates that the person or entity escaping liability must “permit” the public to use the land for recreational purposes. The Defendant did not have the authority to permit the public to make use of the bike path. That authority belonged to the Town of Amesbury. The bike path was constructed by the Town on land owned by the Town. The defendant had nothing to do with the construction of the path and was not “encouraging public access to private land” in any way. See id. The agreement between the Town of Amesbury and National Grid conferred no authority upon the Defendant to exclude others from using the properly or to open the right-of-way for recreational use. See Adams v. Rochester Gas & Elec. Corp., 191 A.D.2d 960, 960 (1993).
The argument asserted by the defendant throughout its motion for summary judgment rests on the fact that National Grid had absolutely no knowledge of the bike path’s presence. This directly contradicts the defendant’s recreational use argument because it was impossible for National Grid to “permit" the public to use a bike path it did not even know existed. Furthermore, the defendant lacked the authority to exclude the public from the land as well. See Adams v. Rochester Gas and Elec. Corp., 594 N.Y.S.2d 501 (1993) (holding a railroad company liable for negligence in spite of the New York Recreational Use Statute because the railroad company did not have the authority to exclude others from using the property for recreational purposes). Throughout its motion, National Grid contended that, as an easement holder rather than a landowner, it had no knowledge of (and no reason to know of) the bike path and that it had no independent duty to inspect or to warn. See Piper, 31 Mass.App.Ct. at 229; Denardo v. Bosworth, No. 324036, 2008 WL 2563354, *7-8 (Trombly, J.) (Land Court June 26, 2008). In the same motion, the Defendant cannot now argue that it had the power to permit or exclude people from using the bike path that runs across its easement. For the foregoing reasons, G.L.c. 21, §17C does not apply, and this section of the Defendant’s motion must fail.
ORDER
Based on the above court findings and analysis, the Defendant’s motion for summary judgment is allowed and the Plaintiffs complaint is herewith dismissed.

 The Plaintiffs claims of a failure to maintain are not applicable to the particular facts of this case. Plaintiff alleges negligent maintenance by National Grid yet such a claim ignores the basic meaning of the term “maintenance.” There is no evidence in the agreed-upon facts that faulty maintenance had anything to do with the Plaintiffs accident. Negligent maintenance occurs when “a certain improvement to real property is not adequately kept up to the standard specified in the original design.” Napolitano v. Massachusetts Turnpike Authortty, No. 03-1642, 2007 WL 4993434 (Kern, J.) (Mass.Super.Ct. Oct. 23, 2007). There is no evidence suggesting that the utility pole (and its guy wires) ever physically deteriorated from its initial condition upon erection in 1997. Just because the Town of Amesbury chose to build a bike path under one of the pole’s support cables does not suddenly mean that the utility pole itself deteriorated from its original condition or design. Recall the Brown court’s reasoning that a “defect” in the utility pole itself could not be “created by the mere juxtaposition of two objects that are totally unrelated to one another.” See 514 F.Sup.2d at 156-58. As the term is understood by this court, there was no “negligent maintenance” in this case. See id.