NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-86                                            Appeals Court

   PENN-AMERICA INSURANCE COMPANY[1]  vs.  BAY STATE GAS COMPANY.[2]

                          No. 19-P-86.

     Plymouth.     October 10, 2019. - December 20, 2019.

        Present:  Wolohojian, Blake, & Englander, JJ.


Negligence, Adequacy of warning, Causation, Public utilities,
     Statute of repose.  Repose, Statute of.  Practice, Civil,
     Claim barred by statute of repose.  Gas Company.



     Civil action commenced in the Superior Court Department on
July 11, 2016.

     The case was heard by Gregg J. Pasquale, J., on a motion
for summary judgment.


     William E. Gericke, of Pennsylvania (Patrick J. Loftus,
III, also present) for the plaintiff.
     Michael R. Byrne for the defendant.


     BLAKE, J.  Following a natural gas fire that caused

extensive damage to a building that Penn-America Insurance

     _____

          [1] As subrogee of King Street Realty Trust.

          [2] Doing business as Columbia Gas of Massachusetts.

Company (Penn-America) insured, Penn-America brought this action, as subrogee for its insured (King Street Realty Trust), against the building's natural gas supplier, Bay State Gas Company, doing business as Columbia Gas of Massachusetts (Columbia Gas). The primary issue before us is whether the statute of repose bars Penn-America's claim that Columbia Gas failed to maintain its more than fifteen year old equipment and thereby caused the fire. On Columbia Gas's motion for summary judgment, a judge of the Superior Court ordered judgment in favor of Columbia Gas after concluding that Penn-America's claim was time barred. Because we disagree, we vacate the judgment.

Background. We summarize the facts contained in the summary judgment record in the light most favorable to Penn-America. See Barrasso v. New Century Mtge. Corp., 91 Mass. App. Ct. 42, 43 (2017). The history of this case dates back to 1996, when Columbia Gas installed a natural gas service line for a building located at 59 Lone Street in Marshfield (the building). That installation included a riser pipe that came out of the ground near the building and a gas meter fit that was attached to the riser pipe through a high-pressure valve. The riser pipe was not secured to the building or otherwise supported. Columbia Gas continued to own this equipment even after it was installed. Over the next two decades, Columbia Gas sometimes had occasion to inspect, repair, or replace its equipment

located at the building, including once in 1998 when it repaired or replaced the natural gas service line, and another time on September 5, 2014, when Columbia Gas responded to a report of a gas leak.

Then, a natural gas fire caused extensive damage to the building on February 16, 2015, amidst record-setting snowstorms. While the cause of the fire remains in dispute, there is evidence that the weight of snow caused the gas meter fit to break above the high-pressure valve, from which gas leaked and then ignited. Penn-America brought this negligence action alleging that, prior to the fire, Columbia Gas had occasion to see how its equipment had been installed and had "fail[ed] to detect and/or correct" problems associated with that installation. In opposing Columbia Gas's motion for summary judgment, Penn-America clarified that this portion of its claim was based on Columbia Gas's continuing duty to maintain its equipment in compliance with State and Federal regulations, which required Columbia Gas to install supports for the riser pipe no later than September 5, 2014. Penn-America further alleged that Columbia Gas failed to warn of the dangers posed by its incorrectly installed equipment and, in particular, that the weight of snow and ice could cause its equipment to break.

Discussion. 1. Failure to maintain. Statutes of repose are less forgiving than statutes of limitation and "strictly

[bar] actions that are not commenced within a defined period after the occurrence of a key event, without attention to when any injury was discovered, or when any cause of action accrued." Barkan v. Zoning Bd. of Appeals of Truro, 95 Mass. App. Ct. 378, 388 (2019). While recognizing the hardship that this may impose on plaintiffs, we nonetheless "enforce[] statutes of repose according to their plain terms." Bridgwood v. A.J. Wood Constr., Inc., 480 Mass. 349, 353 (2018). The statute of repose at issue here, G. L. c. 260, § 2B, provides that "in no event shall" an "[a]ction of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner."

The parties' arguments with respect to G. L. c. 260, § 2B, pertain solely to whether Penn-America's claim "aris[es] out of any deficiency or neglect in the design, planning, construction or general administration" of the installation of the natural gas service line at the building.[3] Columbia Gas contends that

_____

[3] The parties do not dispute that Columbia Gas's equipment constitutes an improvement to real property, that more than six years have passed since "the opening of the improvement to use,"

its failure to correct any problems associated with the installation of the natural gas service line was part of the general administration of that installation and that, moreover, this case is about an original design or construction defect regardless of how Penn-America phrases its claim.  Penn-America responds that Columbia Gas had a continuing duty to maintain its own equipment and that Penn-America's claim arises out of Columbia Gas's breach of that duty versus any duties related to the design or the construction of the natural gas service line. We agree with Penn-America.

"[T]he Legislature's primary objective in enacting § 2B was to limit the liability of architects, engineers, contractors, and others involved in the design, planning, construction, or general administration of an improvement to real property in the wake of case law abolishing the long-standing rule that once an architect or builder had completed his work and it had been accepted by the owner . . . liability was cut off as a matter of law."  Stearns v. Metropolitan Life Ins. Co., 481 Mass. 529, 533-534 (2019).  See Klein v. Catalano, 386 Mass. 701, 708 (1982).  These cases greatly increased the liability of those involved in the construction industry, as injuries frequently do not occur until many years after a construction project is

---

or the "substantial completion of the improvement and the taking of possession for occupancy by the owner."  G. L. c. 260, § 2B.

completed.  Id.  In this respect, § 2B serves a "well recognized public purpose."  Id. at 709.  It prevents architects, engineers, contractors, and others involved in the construction industry from being "subject to possible liability throughout their professional lives and into retirement," when, perhaps, "evidence has been lost, memories have faded, and witnesses have disappeared" (quotation and citation omitted).  Id. at 708-709.

General Laws, c. 260, § 2B, thus applies to any "tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property."  This language "contemplates the occurrence of three phases to any improvement to real property: the design phase, the construction phase, and the administration phase following the completion of construction."  Coca-Cola Bottling Co. of Cape Cod v. Weston & Sampson Eng'rs, Inc., 45 Mass. App. Ct. 120, 126 (1998).  All three phases, including the general administration phase, are part of the same continuous construction project.[4]  See id. at 127 (noting that "general administration" does not include "plumber who negligently repairs a plugged soil line long after the last punch list was satisfied and all professionals paid and released").  Viewed in

_____

[4] We note that the Legislature's objective in enacting § 2B would not be served by including within general administration acts that occur years later.

this context, "[t]he purpose of the [general administration] phase is to remedy design or construction problems which may, and frequently do, emerge following construction."  Id. at 126.

In our view, Penn-America's claim is not barred here because the gravamen of its claim is not the design, planning, construction, or general administration of the natural gas service line.  Rather, the gravamen of Penn-America's claim is the failure of Columbia Gas to properly maintain the service line -- its own property -- to appropriate safety standards.

More specifically, Penn-America does not allege that Columbia Gas should have installed supports for the riser pipe back in 1996 or 1998 when the natural gas service line was first installed and then repaired or replaced.  Nor does Penn-America's claim turn on whether the lack of supports would have been considered a design or construction defect back then.  Rather, Penn-America claims that Columbia Gas should have installed supports for its own riser pipe years later, after pertinent State and Federal regulations, as well as Columbia Gas's own internal standards, may have changed.[5]  By that point

---

[5] As noted in Columbia Gas's brief, it does not dispute for summary judgment purposes that the "State and Federal regulations cited by Penn-America support the imposition of such a 'continuing duty.'"  To the extent that Penn-America's claim turns on issues regarding those regulations and Columbia Gas's own internal standards, such as when they went into effect and what they required on any particular date, those issues are not before us at this time and we do not address them.

in time, even the general administration phase of the installation had concluded.

This case is very different from Coca-Cola Bottling Co. of Cape Cod, 45 Mass. App. Ct. at 127, the only published decision to have addressed the meaning of "general administration."  In that case, an engineering firm spent more than five years immediately following construction of a wastewater treatment plant trying to "remedy the unceasing difficulties that arose in the operation of the plant virtually from the day it opened for use."  Id.  Unlike in Coca-Cola Bottling Co. of Cape Cod, and construing the summary judgment record in the light most favorable to Penn-America, there is no basis for us to conclude that Columbia Gas's failure to install supports for the riser pipe no later than September 5, 2014, was part of the same continuous construction project that began in 1996.

We are also unpersuaded by Columbia Gas's argument that this case is about an original design or construction defect regardless of how Penn-America phrases its claim.  Section 2B requires us to look at the act that serves as the basis for liability.  See Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 694, cert. denied, 484 U.S. 953 (1987) (§ 2B "extend[s] protection to persons allegedly responsible for [specified] acts").  Unlike many of those involved in the construction industry who have no ties to an improvement once the general

administration phase has concluded, Columbia Gas continued to own the equipment at issue here.  As the owner of that equipment, Columbia Gas had additional duties that a nonowner would not have had and may "be liable for damages . . . on a basis independent of a claim of negligence in the design or construction."  Sonin v. Massachusetts Turnpike Auth., 61 Mass. App. Ct. 287, 290 (2004).  One such basis for liability is Columbia Gas's failure to maintain its equipment.  See id. (noting that in Milligan v. Tibbetts Eng'g Corp., 391 Mass. 364, 365 [1984], "plaintiff was allowed to proceed against a defendant municipality on a claim of negligent maintenance of a roadway even though its claims of negligent design against the defendant engineering firm was barred by § 2B").  Thus, the act that may serve as the basis for Columbia Gas's liability is its failure to maintain its equipment to existing safety standards.[6] By its own express terms, § 2B does not apply to such acts. See, e.g., MBA Enters. v. Northern Ill. Gas Co., 307 Ill. App. 3d 285, 287-289 (1999) (similar statute did not apply to claim that defendant failed to maintain gas piping system that had defects dating back to its installation).

---

[6] Columbia Gas further argues that there is no evidence that it negligently maintained its equipment.  This argument ignores the main factual issues in this case:  what supports Columbia Gas should have installed for the riser pipe and when they should have installed them.

2.  Failure to warn.[7]  As to Penn-America's failure to warn claim, Columbia Gas argues that it warned customers of the need to keep their gas meters clear of snow and ice and that there is no evidence to support Penn-America's theory of causation that the weight of snow or ice caused the leak.  The summary judgment record, however, is replete with genuine issues of material fact.  See, e.g., Cargill v. Harvard Univ., 60 Mass. App. Ct. 585, 597-604 (2004).  Whether the content and the manner of distribution of Columbia Gas's warnings were sufficient are jury questions.  See Fiorentino v. A. E. Staley Mfg. Co., 11 Mass. App. Ct. 428, 436 & n.8 (1981).  Some of those warnings, at least one of which indicates that "excessive snow weight can result in damage," also support Penn-America's theory of causation.  This warning, combined with other evidence in the summary judgment record, creates a genuine issue of material fact as to causation.  In particular, a note from the Columbia Gas employee who responded to the fire states that "the pressure [of snow] may have caused the [gas meter] fit to break on the top of the [high-pressure valve]," and several photographs show

_____

[7] In the circumstances, § 2B does not bar this claim, either.  Cf. Sonin, 61 Mass. App. Ct. at 290 (where plaintiff brought claims for negligent design and failure to warn against property owner who participated in designing improvement, "trial judge properly dismissed the plaintiffs' claims for negligent design [due to the applicability of § 2B] and properly submitted to the jury the plaintiffs' claims for failure to warn").

the amount of snow around Columbia Gas's equipment.[8]  Thus, the judge improperly allowed summary judgment in favor of Columbia Gas.

Judgment vacated.

---

[8] The photographs, while taken after someone had cleared a path to Columbia Gas's equipment following the fire, show the amount of snow around that equipment.  We also note that Penn-America disclosed that it had a natural gas expert who was prepared to testify as to causation.  While Columbia Gas argues that this expert's opinion should not be considered for summary judgment purposes, we decline to address the argument as we think there is sufficient evidence of causation to survive summary judgment regardless.