SMITH vs. DIVOLL, 101 Mass. App. Ct. 144

 
 ADAM C. SMITH vs. ANDREW DIVOLL [Note 1] (and a companion case [Note 2]).

101 Mass. App. Ct. 144
 December 9, 2021 - June 9, 2022

Court Below: Superior Court, Worcester County
Present: Neyman, Desmond, & Hershfang, JJ.

 

Nos. 21-P-121 & 21-P-124.

Repose, Statute of. Practice, Civil, Claim barred by statute of repose. Negligence, Building contractor.

In a civil action alleging negligence that arose out of injuries the plaintiff suffered when his motorcycle was struck by a car that was leaving a restaurant parking lot, a Superior Court judge properly allowed summary judgment for the defendants, the general contractor for construction of the restaurant and the person who laid out and painted the parking lot lines, where G. L. c. 26A, § 2B, the six-year statute of repose that applies to certain actions arising out of improvements to real estate, barred the plaintiff's claims against the defendants in that the laying out and marking of the parking lot lines established individual expertise and particularized service that triggered the repose period, and, thus, the filing of the complaint more than six years after the date the lines were painted was untimely. [146-149]

Civil actions commenced in the Superior Court Department on June 1, 2018, and November 29, 2019.

 After consolidation, the cases were heard by Janet Kenton-Walker, J., on motions for summary judgment, and entry of separate and final judgments was ordered by her and by Daniel M. Wrenn, J.

Paul E. Mitchell for the plaintiff.

Patrick J. Markey for Andrew Divoll.

Michael Melville for Da Brothers Contractors, LLC.

 HERSHFANG, J. Adam C. Smith lost a leg and suffered other serious injuries when his motorcycle was hit by a car. Smith maintains that the accident resulted from the flawed design and layout of the painted lines in a restaurant parking lot, which did not afford drivers leaving the parking lot an adequate view of eastbound traffic. In the cases before us, Smith sued both the person 

 Page 145 

who laid out and painted those lines, Andrew Divoll, and the general contractor responsible for the construction of the restaurant, Da Brothers Contractors, LLC (Da Brothers). On summary judgment, the judge dismissed the claims against Divoll and Da Brothers, concluding that those claims were barred by the statute of repose, G. L. c. 260, § 2B. [Note 3] We affirm.

 Background. We summarize the facts in the light most favorable to Smith. On November 25, 2017, a driver pulled out of the parking lot of a restaurant at 632 Parker Street in Gardner and hit Smith, who was riding his motorcycle eastbound on Parker Street. At the exit to the parking lot, the view to the west was obstructed by signs, bushes, a telephone pole, and an electrical box. The driver followed an "out" arrow painted on the asphalt when driving out of the parking lot. Smith was seriously injured and lost a leg.

 Divoll, doing business as Lakeside Line Painting, painted most of the lines on the parking lot's asphalt surface before November 22, 2011, during a period of substantial construction on the property at 632 Parker Street. [Note 4] Following guidance from the property owner's representative, Divoll laid out and painted twenty-one parking-spot lines, one handicapped symbol, two grids, and one "No Parking" marker. Divoll painted the lines on an unmarked surface of newly laid asphalt. [Note 5]

 At the time Divoll painted the lines on the parking lot, he had worked as a line painter for approximately eleven years, following 

 Page 146 

on-the-job training from his father-in-law in operating the sprayer that is used to paint lines on parking lots. Divoll was aware that towns have different bylaws governing parking-lot lines, including requirements for the spacing and color of those lines. He creates layouts for parking lots referring, as needed, to a book that he described as an "A to Z about . . . striping." This book has information such as the correct offset for painting lines with a designated angle (e.g., sixty degrees). Laying out original parking-lot lines involves measuring the spaces, marking them with a "chalk line," and complying with any applicable plans.

 Da Brothers was the general contractor for the project at 632 Parker Street.

 Discussion. 1. Standard of review. We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, "all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted). Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018). "The moving party bears the burden of affirmatively demonstrating the absence of a triable issue." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 550 n.6 (2008). If the moving party carries its burden, "the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact." French King Realty Inc. v. Interstate Fire & Cas. Co., 79 Mass. App. Ct. 653, 659-660 (2011).

 2. The statute of repose. General Laws c. 260, § 2B, reads, in pertinent part, as follows:

"Action of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner."

 "As a statute of repose, G. L. c. 260, § 2B, precludes recovery against those within the protection of the statute for any injury 

 Page 147 

which occurs more than six years after the performance or furnishing of the design, planning, construction, or general administration of an improvement to real property." Klein v. Catalano, 386 Mass. 701, 702 (1982). It is undisputed that the accident occurred more than six years after the lines were painted. We therefore address the applicability of the remaining provisions of § 2B.

 3. Analysis. "[Section] 2B was intended not to apply to mere suppliers of standardized products, but only to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors -- that is to say, to parties who render particularized services for the design and construction of particular improvements to particular pieces of real property." Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 696, cert. denied, 484 U.S. 953 (1987). "On its face, § 2B defines the protected actor largely by reference to protected acts. The body of § 2B names no class of protected actors." Id. at 694. The terms of § 2B instead "extend protection to persons allegedly responsible for acts, i.e., those who commit 'any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property." Id., quoting G. L. c. 260, § 2B.

 "Although the word 'improvement' is not defined in the statute, [Massachusetts appellate courts] have previously found the definition found in Webster's Third New Int'l Dictionary 1138 (1961) helpful: 'a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.'" Conley v. Scott Products, Inc., 401 Mass. 645, 647 (1988).

 Smith contends that (1) Divoll was not a protected actor because he was unqualified to lay out the parking-lot lines and (2) the lines were not an improvement to real property.

 a. Protected actor or protected act. The statute of repose protects those who provide "particularized services for the design and construction of particular improvements to particular pieces of real property," rather than merely supply standardized products. Dighton, 399 Mass. at 696. While certain actors -- architects, engineers, and contractors -- are presumptively included, others may also fall within the statute if they engage in protected acts. See id. at 695-696.

 Applying this framework to Divoll's parking-lot lines, we conclude that those lines were custom designed for the location, 

 Page 148 

following applicable rules and regulations for the size of parking spaces, placement of handicapped spaces, color of paint to be used, and needs of the business. They were designed by Divoll, or another, for this piece of property alone, accounting for the size of the parking lot, location of the restaurant, and instructions from the property owner's representative. The work relied on individual expertise. See McDonough v. Marr Scaffolding Co., 412 Mass. 636, 641-642 (1992). The parking-lot lines were a bespoke solution for the needs of 632 Parker Street, rather than a standardized product susceptible of commercial purchase and general use. Compare id. at 642 (bleachers designed specifically for ice rink fell within statute); Rosario v. M.D. Knowlton Co., 54 Mass. App. Ct. 796, 802 (2002) (custom-made hydraulic lift, designed to specifications of its destination, was particularized improvement for particular piece of real property), with Dighton, 399 Mass. at 694-696 (circuit breaker panel did not fall within statute). The laying out and painting of the lines was a protected activity, and Divoll a protected actor. [Note 6]

 b. Improvement to real property. The parking-lot lines were an improvement to the property at 632 Parker Street. Without the lines, the parking lot was an undifferentiated area of asphalt on which cars might park or drive willy-nilly. The lines imposed order, enhancing safety by providing predictability for drivers and pedestrians who used the parking lot. They added value for the owner of the property by ensuring that the space was efficiently and safely used. The addition of the lines required the "expenditure of labor [and] money" (citation omitted), Conley, 401 Mass. at 647, with Divoll providing the labor and the owner of the property paying the money. The fact that the lines periodically needed repainting as they became faded by time, weather, and natural processes does nothing to disturb this conclusion. [Note 7] See, e.g., McDonough, 412 Mass. at 640 (bleachers that could be 

 Page 149 

disassembled and removed from ice rink were nonetheless improvements within meaning of statute).

 4. Da Brothers. The analysis above disposes of the claim against Da Brothers, which served as general contractor for the job at 632 Parker Street; thus, it is a protected actor under § 2B. See Dighton, 399 Mass. at 696. We have already determined that Divoll's parking-lot layout was a protected activity, and Da Brothers's work at the location, rebuilding a restaurant in accordance with an architect's design, falls under § 2B. As the Supreme Judicial Court noted in Dighton, "[t]he legislative history of § 2B is replete with references to classes of actors, such as architects, engineers, contractors, and surveyors," who are covered by the statute. Id. at 694 n.10.

 Da Brothers maintains that it was not involved in the excavation, paving, or striping of the parking lot while Smith maintains that Da Brothers hired the subcontractors, including Divoll, who performed those tasks. Because the outcome is the same either way, this dispute does not bar the entry of summary judgment. Whether viewed separately as the contractor on the project, or analyzed as a supervisor of Divoll's work, Da Brothers is a protected actor and summary judgment was properly allowed. See Dighton, 399 Mass. at 695-696 ("Because 'the inspection, supervision and observation of construction by architects and contractors involves individual expertise not susceptible of the quality control standards of the factory' . . . , we think that the Legislature, by enacting § 2B, meant to protect providers of 'individual expertise' in the business of designing, planning, constructing, and administering improvements to real estate" [citation omitted]). And if Da Brothers played no role in the repaving and painting of the parking lot, it would similarly be entitled to summary judgment.

 Conclusion. The separate and final judgment entered in favor of Divoll on January 13, 2021, is affirmed; the separate and final judgment entered in favor of Da Brothers on December 4, 2020, is affirmed.

 So ordered.

FOOTNOTES
[Note 1] Individually and doing business as Lakeside Line Painting. 

[Note 2] Adam C. Smith vs. Da Brothers Contractors, LLC. 

[Note 3] While other claims remained as to other defendants, separate and final judgments entered in favor of Divoll and Da Brothers. 

[Note 4] The parties agree that the "in" and "out" arrows were added later when the parking lot was restriped. Because there was no change to the placement of the other, already-existing lines, and because the already-existing lines dictated the placement of the arrows, the later addition of the arrows is not germane to our § 2B analysis. 

[Note 5] There is a dispute about the extent of Divoll's authorship of the design of the parking lot, but that dispute is not material to the outcome. Divoll maintains that he spoke with someone in a position of authority who showed him plans, told him how many parking spots to paint, and directed him where to place the spots in the parking lot. A trustee of the Lower Parker Street Realty Trust, which owned the property, testified that he hired Lakeside Line Painting and that he met once with Divoll to review the striping job. The trustee denied that there was a drawing or other document that showed a design for the parking lot and testified that the design was done by Divoll. Robert Hurtubise, who worked for Da Brothers, testified that he hired the striping company (Lakeside Line Painting) and that either the striping company determined where to paint the lines, the trustee told the striping company, or someone -- not Hurtubise -- showed the striping company a picture of the desired striping. Regardless of who designed the parking lot, or whether there was a written design, Divoll was the one who laid out and painted the lines on the parking lot's unmarked surface. 

[Note 6] Smith argues that Divoll was insufficiently qualified to lay out parking-lot lines, and that his lack of qualifications, combined with a lack of advance design work, exclude Divoll from the protection of § 2B. We disagree with this conclusion. As the Supreme Judicial Court taught in Dighton, 399 Mass. at 696, the statute is "meant to protect providers of 'individual expertise' in the business of designing, planning, constructing, and administering improvements to real estate." As the person who employed his skills and expertise in laying out and painting the parking-lot lines, whether or not he was expert in doing so, Divoll falls within the statute's protection. 

[Note 7] Smith argues that, because the original lines on the parking lot were short lived and needed to be repainted within two or so years when the lot was seal coated, Divoll's line painting was a "recurring maintenance activity." We disagree. When Divoll painted the lines, there were no lines on the asphalt. One cannot maintain something that is not there. It may be that later repainting of the same lines would be a recurring maintenance activity, but that question is not before us and we do not decide it here. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.